442 P.2d 753

**TWIN HARBORS LUMBER COMPANY,**
Plaintiff-Respondent,

v.

Owen CARRICO and Betty Jane Carrico, husband and wife, Defendants-Appellants.

No. 10048.

Supreme Court of Idaho.

July 10, 1968.

J. H. Felton, Lewiston, for appellants.

Swayne & McNichols, Orofino, for respondent.

PER CURIAM.

This is an action by respondent, mortgagee, to foreclose two mortgages on real property. Respondent is a foreign corporation which at the time of execution of the mortgages (and notes they secured) had not complied with Idaho's laws concerning qualification by such a corporation to do business in this state. Not until after instituting this action and proceeding through several preliminary matters, including a summary judgment hearing based in part on appellants, mortgagors, contention that respondent's unqualified status barred it from bringing the action, did respondent six days before trial qualify to do business in Idaho.

Appellants resisted the foreclosures on two grounds: (1) the mortgages were executed as a result of respondent's doing business in Idaho at a time when respondent was not qualified to do business here; and (2) the mortgages, covering land upon which small trees were growing, were in fact part of a scheme arranged by respondent to enable it to purchase those trees from appellants, both respondent and appellants having contemplated and intended that the notes secured by the mortgages would be satisfied exclusively by a portion of proceeds earned by appellants by delivery of such logs to a certain mill; and that upon the unexpected closing of the mill, appellants' obligation to pay the notes secured by the mortgages was excused.

Finding on both grounds for respondent, the district court entered a decree of foreclosure and order of sale. On this appeal from that judgment we find no error and so affirm.

QUALIFICATION BY FOREIGN COR-
PORATION TO DO BUSINESS IN
IDAHO

Relying on I.C. §§ 30–504[1] and 30–505,[2] appellants contend that respondent cannot enforce in the courts of Idaho its rights under the notes and mortgages of present concern. However, such is not the effect of those statutes.

■ Respondent satisfied the requirements of I.C. § 30–504, thereby gaining access to the Idaho courts for purposes of the present action, by qualifying to do business in this state before the time of trial.[3]

With respect to I.C. § 30–505, that statute authorizes and establishes procedure for petition to have declared void in certain circumstances deeds or conveyances of real estate made to non-qualifying foreign corporations doing business in this state, upon which petition the court "may decree such deed or conveyance void in the event such [qualification to do business in Idaho] filings are not made prior to the entering of such decree." Appellants contend that their motion for summary judgment was in fact a petition under I.C. § 30–505, and that upon such motion the district court was required to declare void respondent's title. We do not agree.

■ The statute obviously contemplates that before the court enters a voiding decree the non-qualified corporation shall have some opportunity to comply with the laws of Idaho in order to qualify to do business in this state. In the present action, appellants' motion for summary judgment was based on two separate alleged grounds: (1) respondent's refusal

to make discovery pursuant to Idaho R. Civ.P. 26; and (2) failure to comply with Idaho's laws[4] for qualification to do business here by a foreign corporation. Concerning the second ground, the district court (Judge Webb) determined:

"I cannot, from * * * the only material actually before me in this respect, dispose of the question of whether the plaintiff is barred from prosecution of its claim by 30–504, I.C. [The motion itself also relied on I.C. § 30–505.] I am, however[,] moved to say that there are strong indications that the plaintiff was 'doing business' in the state at the inception of the instruments sued upon. [Citing cases.] This question should be more fully developed."

Thereupon, the court, in accord with appellants' first ground, "conclude[d] that there ha[d] been a willful failure of discovery by the plaintiff [respondent]," and on this ground it entered a conditional judgment dismissing respondent's action unless respondent submitted to full discovery within a stated time. Thereafter discovery was had, appellants filed an answer December 7, 1966, repeating their contention that I.C. §§ 30–504 and 30–505 barred prosecution of the action by respondent, and trial commenced (before Judge Dunlap) February 27, 1967, by which time respondent had complied (February 21, 1967) with the qualification laws.

We note appellants' contention to the contrary, but we agree with the district judge that at the hearing on the summary judgment motion there was insufficient evidence to determine whether respondent had been "doing business in this state"

1. I.C. § 30–504. "No contract or agreement made in the name of, or for the use or benefit of, such corporation prior to the making of such filings as provided in sections 30–501 and 30–502 can be sued upon or enforced in any court of this state by such corporation."

2. I.C. § 30–505. "If any such corporation takes or holds title to any realty within this state prior to making such filings, any pretended deed or conveyance of real estate to such corporation prior to

such filings shall be voidable; and upon petition of any interested party the district court in the county where such real estate is situated may decree such deed or conveyance void in the event such filings are not made prior to the entering of such decree."

3. Spokane Merchants' Association v. Olmstead, 80 Idaho 166, 327 P.2d 385 (1958).

4. I.C. § 30–501 et seq.

in contravention of the pertinent statutes[5] at the time of execution of the mortgages of present concern; therefore, the judge at that time could not decree the mortgages to be void. And appellants did not again request in judicial proceedings that the instruments be decreed void until after respondent had complied with the qualification statutes.[6] Consequently, I.C. § 30–505 is not applicable in the present action.

## DISCHARGE OF APPELLANTS' DUTY OF PERFORMANCE BY CLOSING OF THE MILL

In May 1960, when the mortgages involved in the present action were executed, a company named Tru-Cut Lumber, Inc., owned and operated in Orofino, Idaho, a "stud mill" which processed small sized timber into "scantlings, usually of the dimension of 2 inches by four inches by 8 feet." Appellants explain that normal lumber mills require timber at least twelve inches in diameter for economical manufacture and that only at stud mills is it commercially feasible to process small sized or stud logs.

Tru-Cut negotiated the following business arrangement in order to obtain stud logs for its mill: respondent, a wholesaler of logs and distributor of Tru-Cut's inventory (besides which respondent had made several outstanding loans to Tru-Cut), would supply funds to appellants, who had farming and ranching operations in the Orofino area, to enable appellants to purchase land covered with small trees; appellants would sell their stumpage to Tru-Cut, and then could clear the land and add it to their cattle farming operation; part of the stumpage price would be withheld by Tru-Cut and credited against appellants' obligations to respondent for its loans; and appellants would evidence their debts to respondent by executing promissory notes secured by mortgages in respondent's favor on the purchased tracts. The two mortgages of present concern were executed with reference to this business arrangement.

Each of the two notes—one for $10,000.00, the other for $4,500.00—secured by the mortgages of present concern was payable with seven per cent interest "in lawful money of the United States" to be paid "in manner following, that is to say: at the rate of $10.00 per thousand feet for all lumber delivered to the mill of TRU-CUT LUMBER, INC., from the premises which are mortgaged to secure this note indebtedness; with the entire amount to be paid two (2) years from the date hereof." Each note also has a normal default acceleration clause. Each mortgage contains the following clause:

"It is the contemplation of the parties hereto that the said promissory note is to be paid out of the proceeds derived from the sale of the timber now being on the above described real property; and the parties of the first part agree to deliver all timber removed from said premises to the mill of Tru-Cut Lumber, Inc., near Orofino, Idaho, and to authorize the said Tru-Cut Lumber, Inc., to withhold from the purchase price of all such timber so delivered the sum of $10.00 per thousand feet, and to remit the same to the party of the second part to be applied upon the said promissory note indebtedness, until such time as the same is paid in full."

An agreement was drawn between appellants and Tru-Cut effecting the provisions of the "contemplation" clause just quoted. This agreement noted that the pertinent "lands and timber" were subject to a mortgage to respondent "and that by the terms of the said mortgage, the indebtedness is to be paid from the proceeds of the sale [to Tru-Cut] of the timber above described."

Between June 1960 and April 1962, appellants delivered timber to Tru-Cut and

5. Ibid.

6. The amended findings and conclusions do not determine whether at the time of execution of the notes and mortgages respondent was "doing business in this state" within I.C. § 30–501. In effect, the court ruled that was immaterial since respondent had complied with qualification requirements before trial.

obtained the agreed credit against their notes. During about the same period, respondent became Tru-Cut's sole financier (having paid off some other creditors), ultimately holding its notes for more than $60,000.00, an amount which apparently exceeded the value of Tru-Cut's assets. About April 1962, appellants ceased delivering logs to Tru-Cut. This stoppage was partly due to the exigencies of appellants' ranching activities which left no time for logging; but also about this time Tru-Cut found itself in deepening financial trouble, being in default in payment of its notes made to respondent. Shortly thereafter, Tru-Cut closed its operations and on October 15, 1962, respondent instituted an action against Tru-Cut to foreclose its chattel mortgages on Tru-Cut's machinery. The court found, and there is no evidence to the contrary, that respondent's purpose in this foreclosure "was to protect itself against further losses, and in no sense for the purpose of frustrating or injuring the defendants [appellants] in any way. * * * [T]he foreclosure action * * * was fully justified under the circumstances."

Appellants' defense regarding excuse or discharge of its duty of performance (to pay the promissory notes secured by the mortgages of present concern) may be summarized as follows: the continued commercial existence of Tru-Cut was absolutely essential if appellants were to pay off their notes and mortgages; respondent's loans and appellants' notes and securing mortgages given in exchange were all made with intended reference to the Tru-Cut operation as providing the exclusive fund from which appellants would satisfy their debts; but respondent willfully caused Tru-Cut to close, thereby making it impossible for appellants to pay their debts. Respondents counter that funds received from Tru-Cut were only an alternative method of pay-

ment and that if the parties had intended to make Tru-Cut the exclusive source of payment for appellants' debts the notes and securing mortgages would have specifically so provided.

Besides the pertinent language set out above from the mortgage documents, there was additional relevant evidence regarding the intent of the parties concerning method(s) of satisfying appellants' debt obligations. Evidence favorable to appellants included testimony by an officer of respondent corroborating appellants' contention that a purpose (and perhaps the only purpose) of respondent's loan to appellants was to enable them to purchase the mortgaged tracts and thereby to supply Tru-Cut with small logs; and testimony by appellant that had he known Tru-Cut would close when it did he never would have entered the transaction because he considered Tru-Cut to be the only commercially practical market in the area. However, favorably for respondent, there was evidence that two other stud mills existed within forty miles of the mortgaged tracts, appellant husband admitting on cross-examination that he did not search for another market after Tru-Cut had closed. Also, it developed at trial that a third note and securing mortgage made by appellants in favor of respondent, executed before the instruments of present concern but containing a substantially similar contemplation provision concerning intended method of payment, was in fact paid off in cash (not from credit or funds received for delivery of logs to Tru-Cut). And further, with respect to the debt obligations of present concern, when they matured initially appellants attempted to borrow money from independent sources in order to satisfy those obligations, respondent forbearing at appellants' request while they searched for such funds.[7]

7. In this regard the court found:
"XV.
"That subsequent to the closure of the mill of Tru-Cut Lumber Company, Inc., the defendants [appellants] attempted to negotiate a loan from the Farm Home Administration, one of the purposes of which was to pay the balance of the note and mortgage referred to above. That, for such purpose, and at the request of the defendants [appellants], the plaintiff [respondent] agreed to withhold the institution of a suit to collect upon the note and foreclose the mortgage."

The district court found [8] the Tru-Cut arrangement was an alternative method of payment and that Tru-Cut's inability to receive and to pay for appellants' logs did not excuse or discharge appellants' obligations to repay the funds borrowed from respondent.

■■ At the outset of our discussion of this defense, we point out that though appellants have presented their contentions in terms of the doctrine of frustration of contract purpose, strictly speaking that doctrine is not applicable here. The frustration principle operates in a proper situation to excuse a promisor's duty of performance if some supervening event has destroyed the value of the counter-performance bargained for by the promisor, even though the counter-performance is still literally possible.[9] Thus, in the leading case of Krell v. Henry,[10] a frustration defense excused a promisor's duty to pay seventy-five pounds rent for a balcony hired for use in viewing a coronation procession, the procession having been cancelled when the king became ill. In contrast, in the present action, whether respondent's performance be considered money alone or money earmarked as the wherewithal for purchase of the pertinent tracts of land, the value to appellants of respondent's performance was not appreciably diminished by Tru-Cut's insolvency and consequent closure. Rather, appellants' predicament concerns the method or means enabling their counter-performance, and appellants contend that such counter-performance became impossible due to the destruction of a method or means of performance which was intended by the parties to be the exclusive means of and therefore absolutely essential to the duty of their performance.

■ The doctrine of impossibility excusing performance of a contractual obligation, insofar as relevant in the present setting, provides generally that if by express terms of a bargain or within the contemplation of the bargaining parties the existence of a specific thing is essentially necessary for the performance of a promise in the bargain, "a duty to perform the promise * * * is discharged if the thing * * * subsequently is not in existence in time for seasonable performance." [11]

8. The pertinent finding is:

"XII.

"That one of the purposes of the note and mortgage referred to above was to allow Tru-Cut Lumber Company, Inc. to purchase logs from the defendants [appellants]. That the note and mortgage were not, and did not contemplate an agreement by the plaintiff [respondent] to purchase logs from the defendants [appellants]. That both the plaintiff [respondent] and the defendants [appellants] agreed and intended that said note and mortgage would be paid and satisfied in money or money's worth. That the provision contained in the note and mortgage concerning payment by the delivery of logs by the defendants [appellants] to Tru-Cut Lumber Company, Inc. was an alternative method of payment. That the inability of Tru-Cut Lumber Company, Inc. to receive and pay for the logs of the defendants [appellants] did not forgive the defendants [appellants] their obligation to pay and satisfy the note and mortgage."

9. See generally 1 Restatement, Contracts § 288 (1932); 6 Corbin, Contracts §§ 1353 et seq. (rev.vol.1962); 6 Williston, Contracts §§ 1954–1955 (rev.ed.1938); Simpson, Contracts § 182 (2d ed. [Hornbook] 1965); Annot., 84 A.L.R.2d 12, § 15, pp. 70–76 (1962).

10. 2 K.B. 740 (1903).

11. 2 Restatement, Contracts § 460 (1932). Accord Parsons v. Bristol Development Co., 62 Cal.2d 861, 44 Cal.Rptr. 767, 402 P.2d 839 (1965); cf., Cannon v. Huhndorf, 67 Wash.2d 778, 409 P.2d 865 (1966); United States v. Buffalo Coal Mining Company, 345 F.2d 517 (on denial of petition for rehearing) (9th Cir. 1965); Foster v. Atlantic Refining Company, 329 F.2d 485 (5th Cir. 1964); see generally Annot., Modern Status of the Rules Regarding Impossibility of Performance as Defense in Action for Breach of Contract, 84 A.L.R.2d 12, § 19, pp. 92–

■ Though widely accepted,[12] the specific doctrine has never been considered in an opinion by this Court. Nor do we find an exhaustive discussion of the doctrine to be required or worthwhile on the facts presented. A sine qua non for application of the doctrine is that the parties must have contracted, expressly or in necessary contemplation, with reference to continued existence of the specific thing as a condition essential to performance.[13] Otherwise, the fundamental principle underlying the law of contracts will operate to bind the promisor to perform according to the terms of his agreement.

■■ In the present action, the district court found[14] that the pertinent provision concerning delivery of logs by appellants to Tru-Cut was merely "an alternative method of payment," appellants and respondent having "agreed and intended that said note and mortgage would be paid and satisfied in money or money's worth." The record contains sufficient evidence, summarized above, to support this finding, and so it will not be disturbed. In face of this finding, the doctrine of impossibility excusing performance is not available to appellants.

Pursuant to the contracts of the parties, I.C. § 3–205 and respondent's motion, respondent is awarded the sum of $500.00 by this court as reasonable attorney's fees on this appeal.

The judgment appealed from is affirmed. The district court is directed to add the sum of $500.00 attorney's fees, herein awarded to respondent, to the judgment against appellants (defendants below). Costs to respondent.

102 (1962); 6 Corbin, Contracts § 1339 (1962); 6 Williston, Contracts §§ 1948 and 1952–1953 (rev.ed.1938); Simpson, Contracts § 182 (2d ed. [Hornbook] 1965).

12. Ibid.

13. See authority cited n. 11, supra.

14. See n. 8, supra.