570 P.2d 854

Rex FURNESS and Harold Furness, dba
Furness Brothers, a partnership,
Plaintiffs-Respondents,

v.

Lavere F. PARK, Defendant-Appellant,

and

C. K. Cattle, Inc., a corporation,
Defendant-Respondent.

No. 12049.

Supreme Court of Idaho.

Aug. 24, 1977.

Rehearing Denied Nov. 18, 1977.

Robert M. Kerr, Jr., of Kerr, Williams & Clarke, Blackfoot, for defendant-appellant.

Gordon S. Thatcher, of Rigby, Thatcher & Andrus, Rexburg, for respondent Furness Bros.

Gregory P. Meacham, of Petersen, Moss & Olsen, Idaho Falls, for respondent C. K. Cattle, Inc.

BAKES, Justice.

This action was initiated by an interpleader. Rex and Harold Furness, dba Furness Bros., purchased hay harvested from a 320 acre tract in Jefferson County. However, because two parties were making conflicting claims of ownership to the land and to the hay grown on it, Furness Bros. deposited the purchase price of the hay with the district court to let the district court resolve the dispute. Thus, the real parties in interest in this action are appellant Lavere F. Park and respondent C. K. Cattle, Inc., the parties claiming ownership of the hay and the land.

The property in question had originally been owned by William T. and Theola Simmons. The Simmonses sold their interest in the property to Lavere Park and his wife Gertrude in a real estate agreement dated November 2, 1972. The agreement called for the Parks to make a $25,000 down payment, pay the remaining $71,000 of the purchase price in monthly installments of $588.83, and make certain additional interest payments. The Parks in turn executed a written agreement dated November 3, 1972, which assigned their rights in the Simmons contract to C. K. Cattle Co. C. K. Cattle claimed that it acquired all the Parks' interest in the Simmons property through this assignment by paying the Parks $25,000 plus assuming the unpaid balance of their contract with the Simmonses. The Parks, on the other hand, claimed that in the spring of 1973 they had been fraudulently induced to sign the assignment which was back-dated to November 3, 1972, to shield their sons' dairy operation upon the property from creditors, never intending to give up their interest in the land; that they had not received fair consideration for the Simmons property; and that as a result they had been defrauded of the Simmons property and were entitled to regain it and the hay crop which resulted in the interpleaded funds. The district court found that C. K. Cattle had acquired the Simmons property from the Parks for $25,000 consideration, and that this transaction had not been part of a scheme in which the Parks had given up their interest in the Simmons property without intending to do so or without receiving the consideration they had expected.[1] It therefore concluded that respondent C. K. Cattle Co. was entitled to retain the real property and was entitled to the interpleaded fund. The appellant Park

---

1. The district judge in this case issued a written memorandum decision which apparently served as the basis for the findings of fact and conclusions of law prepared by the respondent's counsel and signed by the district judge. There is some variation between the district judge's written decision and the findings of fact and conclusions of law later prepared by counsel and signed by the district judge, but we feel that there has been no material change between the two. *Cf. Compton v. Gilmore,* 98 Idaho 190, 560 P.2d 861 (1977).

has assigned all of the district court's material findings of fact as error.

The evidence offered in this case was sharply conflicting. The testimony offered by Mark Clark, C. K.'s principal stockholder and executive officer, differed sharply from that given by Lavere Park. The testimony given by Simmons sometimes supported Clark's testimony and other times supported the Parks'. The findings of the district court generally followed the testimony of Clark and C. K.'s witnesses rather than that of Park and his witnesses. All of the material findings assigned as error were supported by the testimony of Clark, Simmons, the documentation or other witnesses or reasonable inferences from their testimony, and thus, they will not be set aside upon appeal. I.R.C.P. 52(a); *Williams v. Paxton*, 98 Idaho 155, 559 P.2d 1123 (1977). Accordingly, we reject the appellant's assignments of error challenging the findings of fact.[2]

Our affirmance of the findings of fact of the trial court does not, however, dispose of all the issues presented in this appeal. Park argues that the assignment of the Parks' interest in the Simmons property to C. K. Cattle was ineffective because at the time of transfer C. K. Cattle had not filed its articles of incorporation in Bannock County, the county in which the registered office of the corporation was located, or Jefferson County, the county in which the Simmons property was located, nor were the articles later filed within sixty days of the transfer of the interest. It is apparent that C. K. was not in compliance with the following requirement of I.C. § 30–108, the

section dealing with filings of articles of incorporation of domestic corporations:

"30–108. Filing and recording articles of incorporation.—

.    .    .    .    .

"3.    .    .    . One (1) of the sets of the articles of incorporation shall then be filed for record in the office of the county recorder of the county in which the registered office of the corporation is situated

.    .    .

"4. No corporation formed under the provisions of this act [the act providing for incorporation in Idaho] shall purchase, locate or hold real property in any county of this state without filing a copy of its articles of incorporation    .    .    . in the office of the county recorder of the county in which such property is situated, within sixty (60) days after such purchase or location is made. Any corporation failing to comply with the provisions of this section must not, while so in default maintain or defend any action or proceeding in relation to such real property."

C. K. filed the necessary articles of incorporation after this action was initiated by the Furnesses. The questions presented are whether the transfer of the real property interest to C. K. Cattle was ineffective because the articles had not been filed within sixty days of the acquisition of the property and whether the late filing of the articles removed all impediments to C. K. acquiring any interest in the land and participating in this action. We hold that the late filing cured any statutory disabilities involving C. K.'s acquisition of real property rights and participation in the suit.

---

2. Throughout much of his brief the appellant argues that findings of fact based upon the testimony of Mark Clark, C. K. Cattle's principal owner and executive officer, were not based upon substantial evidence because as a party to the suit Clark was inherently unreliable or because his answers showed inconsistency or evasiveness. C. K. Cattle could as easily characterize Park's testimony in the same manner and then proceed to argue that it was inherently unreliable. In this case where there were many issues of fact in which the only evidence available was the sharply conflicting testimony of Park or Clark, the district court's

finding of fact accepting the testimony of one of them and rejecting the testimony of the other is precisely the kind of determination that this Court will not disturb upon appeal. We emphasize this because the bulk of the appellant's assignments of error relating to findings of fact concern findings based upon conflicting evidence of this kind. As this Court has stated many times, when reviewing findings of fact we must review the evidence in the light most favorable to the respondent. *Matter of Estate of Webber*, 97 Idaho 703, 551 P.2d 1339 (1976); *Glenn Dick Equipment Co. v. Galey Const., Inc.*, 97 Idaho 216, 541 P.2d 1184 (1975).

In *Twin Harbors Lumber Co. v. Carrico*, 92 Idaho 343, 442 P.2d 753 (1968), this Court considered I.C. § 30–505, the analogous provision of the statutes regulating foreign corporations doing business within Idaho, and based upon the more detailed statutory language of I.C. § 30–505 held that a filing prior to entry of the final decree made the transfer of real estate effective and no longer voidable and allowed the corporation to appear in the suit. 92 Idaho at 345–346, 442 P.2d 753. We adopt the same rule for domestic corporations. We acknowledge that some of our language in the case of *Jolley v. Idaho Securities, Inc.*, 90 Idaho 373, 389, 414 P.2d 879 (1966), could be interpreted to mean that a filing more than 60 days after the real estate transaction but before the final decree would not make a potentially voidable real estate transfer effective. But in order to prevent the somewhat ambiguous language of I.C. § 30–108 from being interpreted at odds with the clearer language of I.C. § 30–505, thereby setting forth rules more favorable to foreign corporations than domestic corporations and inviting a possible equal protection challenge, we construe the ambiguous language of I.C. § 30–108 to allow a domestic corporation to validate its real estate transactions by filing its articles of incorporation where required by law at any time prior to entry of final decree.

The appellant has also raised several questions dealing with the assignment of the Simmons' property concerning proof that Lavere Park's wife Gertrude signed and acknowledged her transfer of the community realty. I.C. § 32–912 requires both husband and wife to execute and acknowledge instruments conveying their community real property for the conveyance to be effective.[3] Lavere Park argues that the evidence does not show that either he or his wife's signature was ever acknowledged before the notary. However, a husband or wife challenging the validity of the acknowledgment of a document which he or she admittedly signed must carry the burden of showing that it was never acknowledged.

"In Idaho a certificate of acknowledgment, complete and regular on its face, raises a presumption in favor of the truth of every fact recited therein, and the burden of proving a state of facts which will overcome the probative force of the certificate is upon the party assailing it. *Clegg v. Eustace,* 40 Idaho 651, 237 P. 438 (1925). This burden must be met by clear and convincing evidence (*Sneddon v. Birch,* 39 Idaho 720, 230 P. 29 (1924)), and the uncorroborated testimony of the party acknowledging the instrument is insufficient to overcome the force of the certificate. *Clegg v. Eustace,* supra." *Credit Bureau of Preston v. Sleight,* 92 Idaho 210, 215, 440 P.2d 143, 148 (1968).

"This court has heretofore held that a notary's certificate will not be vacated upon the unsupported testimony of the party bound, where such party in fact signed the instrument attacked." *First Nat. Bk. of Pocatello v. Commercial Union A. Co.,* 40 Idaho 236, 250, 232 P. 899, 903 (1925).

Given these presumptions and reviewing the evidence introduced at trial, we uphold the district court's finding that Gertrude Park's signature had been properly acknowledged. *Cf. Matter of Estate of Yee,* 98 Idaho 147, 559 P.2d 763 (1977).

In other assignments of error related to the transfer of the property, Park argues that the court erred in failing to allow him to explain his understanding of the triangular agreement by which he and his wife, C. K. Cattle and the Simmonses

---

**3.** The pertinent part of I.C. § 32–912, as it appeared in 1972 and 1973, provides:

"[The husband] can not sell, convey or encumber the community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered; . . . ."

This portion of the section, which was reworded slightly in the 1974 amendments to the section, I.S.L. ch. 194, has been interpreted to mean that instruments conveying community realty, even when signed by both husband and wife, are ineffective unless acknowledged by both husband and wife. *Durant v. Snyder,* 65 Idaho 678, 151 P.2d 776 (1944).

once intended to exchange certain properties and of the understanding underlying his assignment of the Simmons place to C. K. Cattle Co. The trial court ruled this testimony inadmissible on the ground that it was hearsay because it was based upon information Park learned from his son Blaine Park, who had been involved in the negotiations. This ruling was erroneous for three reasons. First, while the hearsay rule generally prohibits a witness from relating the statements of other persons for the purposes of proving the truth of the other person's assertions, it does not prohibit a witness from testifying what his understanding was of an agreement with those other persons, even if the agreement was based upon such conversations. *Simplot Soilbuilders, Inc. v. Leavitt,* 96 Idaho 17, 18, 523 P.2d 1363 (1974); *Killinger v. Iest,* 91 Idaho 571, 576, 428 P.2d 490 (1967). *See* McCormick on Evidence, § 249, pp. 588–589 (1974). One of the facts at issue where fraud is alleged is the witness's understanding of the agreement, not whether his understanding was based upon conversations termed hearsay under the rules of evidence. So long as the witness is in court and available to be cross examined concerning his understanding of the agreement, his description of the agreement is not hearsay. *Killinger v. Iest, supra.* Second, this testimony was not necessarily being offered to show the truth of the statements which Park relied on, but to show that Park believed these statements and as a result he parted with his property because of this belief when he would not otherwise have done so. Thus, it should also have been admitted for this reason. McCormick, *supra,* § 249, pp. 588–590. Third, testimony at trial showed that Blaine Park had been acting as an intermediary in carrying out the negotiations among C. K. Cattle, the Simmonses and his parents, and that the court could easily have found that he was acting as an agent for some or all of them in performing this function, so his statements could have been admissible as the statements of an agent of a party opponent. *See Callahan v. Wolfe,* 88 Idaho 444, 400 P.2d 938 (1965). Even though the trial court erred in failing to allow Park to explain his understanding of the agreements at several times during his questioning (Rptr.Tr., pp. 145–146, 152), and in refusing an offer of proof concerning these statements upon which he based this belief (Rptr.Tr., pp. 186–187), the record shows that throughout the rest of the trial Park was able to explain his beliefs and the basis for his beliefs to the trial judge (Rptr.Tr., pp. 161–162, 178–179, 183–185, 191). Thus, the error was not prejudicial and it is not grounds for reversal.

■ Next, we will consider two assignments of error dealing with payments that Park argues C. K. Cattle should make to him if this Court upholds the district court's determination that C. K. Cattle owns the Simmons property. After November of 1972, Park made $8,851.60 in payments to Simmons which Simmons applied against the unpaid principal and interest owed on the contract which Park had assigned to C. K. Cattle. C. K. Cattle was also making irregular payments to Simmons during this time. Park was awarded judgment against C. K. Cattle for the $8,851.60, but also claims upon appeal that he is entitled to interest on this amount from the time he made the payments to Simmons. While this Court has recognized an entitlement to prejudgment interest on payments due under a contract from the time of the breach of contract or proper demand for payment, *Mitchell v. Flandro,* 95 Idaho 228, 506 P.2d 455 (1973), it has not required that prejudgment interest be awarded in all cases involving liquidated debts, particularly in cases such as this in which payment was not due under a contract, a demand for reimbursement for the payments made was not presented before the litigation began, interest was not prayed for in the pleadings, the question of the right to interest was not raised before appeal, and it was not shown that the person who benefitted from the payments had ever received the use of the money so that it would be equitable to award interest for use of the money. *Cf.* I.C. § 28–22–104; I.R.C.P. 15(b).

Park also argues that he is entitled to reimbursement for property taxes he paid on the Simmons property and for payments he made for spraying hay grown on the Simmons property during the time in which he contends he was claiming in good faith to be entitled to the property. The trial court did not err in failing to award such payments. Again, Park did not put these questions at issue in the pleadings nor can it be said that they were considered at trial with the express or implied consent of the parties. Thus, C. K. Cattle did not know that evidence of these payments was introduced to show a claim for reimbursement rather than to show that Park was exercising an owner's authority over the property. Thus, C. K. Cattle had no reason to question whether appellant Park had gratuitously made payments on behalf of the Park Bros. Dairy, Inc., the corporation run by his sons that was operating on the Simmons property, to benefit that corporation and whether it was that corporation, not C. K. Cattle, which received the benefits of the payments, so it had no opportunity to litigate that point. Accordingly, the trial court did not err in failing to consider these questions. I.R.C.P. 15(b); *Lynch v. Cheney*, 98 Idaho 238, 241–242, 561 P.2d 380 (1977).

Finally, Park argues that the trial court erred in ordering him to pay the Furnesses reasonable attorney fees of $350. However, I.C. § 5–321 provides the following in cases in which the court has discharged an interpleading party from liability after that party has deposited the disputed property with the court:

"A person possessing the property . . may insert in his motion for interpleader a request for allowance of his costs and reasonable attorney fees incurred in such action. In ordering the discharge of such party, the court may, in its discretion, award such party his costs and reasonable attorney fees from the amount in dispute which has been deposited with the court. At the time of final judgment in the action, the court may make such further provision for assumption of such costs and attorney fees by one (1) or more of the adverse claimants. . . .."

The award of attorney fees was authorized by statute and it was not error.

We have reviewed the appellant's remaining assignments of error and find them to be without merit.

Judgment affirmed. Costs to respondents.

McFADDEN, C. J., and DONALDSON, SHEPARD and BISTLINE, JJ., concur.