605 P.2d 80

Albert CHRISTENSEN, Jr. and Martha J. Christensen, husband and wife, Plaintiffs-Respondents,

v.

A. David CHRISTENSEN and Elizabeth Mae Christensen, husband and wife, and Joan Carol Christensen, former wife of A. David Christensen, Defendants-Appellants.

No. 12849.

Supreme Court of Idaho.

Dec. 20, 1979.

Jay D. Sudweeks of May, May, Sudweeks & Shindurling, Twin Falls, for defendants-appellants.

R. M. Whittier, Pocatello, for plaintiffs-respondents.

BAKES, Justice.

This appeal involves an action by Albert and Martha Christensen (sellers) against their son, David Christensen (buyer), arising from the sale of the senior Christensens' farm in Arimo, Idaho, to their son David. Appellant David Christensen brings this appeal from a district court judgment granting respondents money damages and order-ing a judicial sale of the property. We affirm in part, reverse in part, and remand to the district court for further proceedings.

In July of 1967 Albert and Martha sold the farm to their son David, using a typical real estate contract.[1] Under the terms of the contract the purchase price of $60,000 was payable in monthly installments at 5% interest. David was to pay the property taxes and insurance premiums. The contract provided for the forfeiture of David's interest in the event he breached the covenants and provided for an award of attorney fees and court costs in the event judicial action was necessary "for the enforcement of this contract for the repossession of said premises."

Pursuant to the terms of the contract an escrow account was established at the First Security Bank of Idaho in Preston, Idaho, in which the contract and deeds were deposited and to which the installment payments were to be made. Also placed in escrow pursuant to the contract provisions was a state land lease granted Albert in 1963 and an assignment of that lease from Albert to David.

In 1969 David, with Albert's consent, sold 135 acres of the farm for $26,000. Part of the sale proceeds were used to satisfy a mortgage securing a loan Albert had previously obtained from the Federal Land Bank in Preston. Although the proceeds from the Federal Land Bank loan were used by David in his dairy operation, Albert had actually obtained the loan because David lacked the necessary credit standing. David, however, was to repay the loan. Some of the remaining funds received from sale of the 135 acres were used by David to purchase a truck and also to make a $6,000 payment to the escrow account on the contract.

1. David's wife at the time of the sale, Joan Carol Christensen, was also party to the contract and named a defendant in the case. After the contract of sale was executed but before these proceedings were instituted David and Joan divorced and David later married Elizabeth Mae Christensen, who is also named a defendant in this action. However, neither Joan nor Elizabeth participated in the proceedings below. The trial court found that neither Joan nor Elizabeth had any interest in the property subject to this litigation, and neither has participated in this appeal.

In July of 1975 David and Albert borrowed $17,794.84 from Associates Financial Services, secured by a mortgage on the farm. The proceeds of this loan were used to satisfy some of David's obligations to another finance company, to purchase a mobile home for Martha and Albert to live in and to purchase a combine. The first annual payment on the loan from Associates came due on December 1, 1975. After David failed to pay it, Albert made the payment of $4,247.32 with money he borrowed from his daughter.

After his payment of $6,000 in 1969, David made only two other payments to the escrow account: $85 in October of 1970 and $2,000 in 1973, both of which were applied entirely to interest. David failed to pay the property taxes for 1974, 1975 and 1976 and allowed the insurance policy covering the property to lapse. Also, the state land lease expired in 1972 while in escrow, and David obtained a new lease in his own name.

During the 1975 and 1976 seasons Albert, using David's farm equipment over David's objections, farmed the land. Albert did not pay David any share of the farm's earnings for 1975 and 1976, nor did he pay David for use of David's equipment. Albert believed David had committed waste on the farm by failing to maintain the fences, irrigation ditches, and the farmhouse and by permitting rye grass to spread. At the subsequent trial, Albert testified that it would cost approximately $15,000 to rehabilitate the land and $3,000 to repair the farmhouse.

On April 7, 1976, Albert notified First Security Bank that David was in default on his payments and sought withdrawal of the escrow documents. The following day the bank notified David by letter of Albert's desire to withdraw the escrow documents and advised David that, pursuant to the escrow agreement, he had sixty days to cure his default. David did not cure the default, and his attorney notified the bank that a lawsuit would be necessary "to straighten out the adverse claims involved."

On July 15, 1976, Albert and Martha filed suit against David, alleging in their first count that David had failed to make payments in accordance with the terms of the contract and had failed to pay the taxes and maintain a proper insurance policy on the property. They sought the return of the escrow documents, a money judgment for the balance due on the contract, attorney fees and a judicial sale of the property. In their second count, they sought return of the state land lease which was in escrow. In the third count, they alleged that David had purchased a mobile home with proceeds from the Associates loan acquired by Albert and sought an equitable lien on the title of the mobile home. In their fourth count, the plaintiffs sought damages for waste and destruction to the real property and asked that Albert be appointed conservator of the property during litigation.[2] In October of 1976, Albert paid off the balance of the loan with Associates, $16,798.40, with sums he had borrowed from his daughter and had the mortgage assigned to himself.

David answered the complaint and generally denied the plaintiffs' allegations. As an affirmative defense, he claimed a setoff for the rental value of Albert's use of his property. At trial David testified that the rental value of the farm equipment used by Albert in the 1975 and 1976 seasons was $18,435.

Following a court trial the district court entered a memorandum decision on August 19, 1977, proposing to the parties an equitable alternative to the judicial sale sought by the plaintiffs. The court determined that it would be fair and equitable to order a forfeiture of the contract provided that David convey to the plaintiffs the mobile home, that the plaintiffs release David from all claims including the loan from Associates, and that the plaintiffs purchase from David the various items of farm equipment. The parties rejected the proposal, and on September 23, 1977, the district court entered the following judgment in favor of the plaintiffs: (1) $55,657.67 plus interest as the amount due on the contract; (2) $4,247.32 plus interest for the payment made by the

2. Apparently, Albert was later appointed receiver of the property during this litigation.

plaintiffs on the Associates loan; (3) $16,798.40 plus interest for the payoff of the Associates loan and the assignment of the mortgage; (4) $93.00 plus interest for water assessments paid by the plaintiffs; and (5) $277.50 for property taxes paid by the plaintiffs.

Referring to the 1969 sale of the 135 acres, the court awarded the plaintiffs $7,000 because that sum "went directly to the defendant for his use and benefit and since the subject matter of the contract has been depleted by 135 acres . . . ." The district court further awarded the plaintiffs $150 for the cost of a title search and $10,000 in attorney fees. The court concluded that David's claim for the 1975 and 1976 rental value of his equipment used by Albert was offset by the plaintiffs' claim for waste and therefore allowed David nothing for the rentals and the plaintiffs nothing for waste. The court ordered that the equipment which David purchased at the time he entered into the contract and other items of equipment purchased in the interim be returned to him and that he be awarded the combine and mobile home. The court further ordered that any land leases previously transferred by the plaintiffs to David be transferred from David to the plaintiffs.

The court concluded that the plaintiffs were entitled to a money judgment for a total of $108,934.05, and ordered a judicial sale of the premises. The court ruled that the plaintiffs were entitled to a deficiency judgment against David in the event the proceeds of the sale were insufficient and held that David was entitled to a one year right of redemption. David has brought this appeal from that judgment and decree.

We have reviewed the record in this case and conclude that there is substantial evidence to support the district court's findings that the appellant was in default on the real estate contract, that the appellant was given adequate notice of his default, that the respondents had not waived their right to demand strict compliance with the terms of the contract, and that the respondents were entitled to money damages for

the payments they had made on the Associates loan. These findings will not be disturbed by this Court on appeal. I.R.C.P. 52(a); *Bradford v. Simpson,* 98 Idaho 830, 573 P.2d 149 (1978).

However, the trial court did err in awarding the respondents $7,000 for the sums David received in 1969 from the sale of a portion of the farm. The respondents brought an action for the appellant's breach of the contract, seeking a money judgment for the balance due on the contract. The trial court granted them a judgment for that amount. With that judgment the respondents were made whole with respect to the contract: they had received all they had bargained for under the contract. As we said in *King v. Beatrice Foods Co.,* 89 Idaho 52, 402 P.2d 966 (1965): "[T]he purpose or objective of the court is to place the injured party . . . in the position no better and no worse than he would have occupied had the contract been performed." *Id.* at 58–59, 402 P.2d at 969. There was no basis for awarding the respondents $7,000 as a result of appellant's sale of the 135 acres in addition to the award for the balance due on the contract. That award improperly put them in a position better than that they would have occupied had there been no breach.

The trial court likewise erred in offsetting the appellant's claim for rentals against the respondents' claim for waste. Respondents did not seek a forfeiture of the contract and repossession of the property unencumbered by the appellant's interest in the contract. Rather, they sought money damages for the outstanding balance on the contract. It is arguable that a vendor who seeks a forfeiture of the contract and repossession of the property may be entitled to money damages for waste if the buyer's actions during the contract period have diminished the value of the property. *See* 5 R. Powell, The Law of Real Property § 648 (1968). However, respondents did not seek a forfeiture of the contract but sought mon-

ey damages for the balance due on the contract; they did not seek to repossess the premises. Thus, there was simply no basis for awarding them damages for waste. *Cf. Cornelison v. Kornbluth,* 42 Cal.App.3d 521, 542 P.2d 981 (1975) (beneficiary under deed of trust who purchased property at private foreclosure sale by bidding the outstanding balance not entitled to action for waste); *Henderson v. Morley,* 241 Or. 164, 405 P.2d 359 (1965) (action for waste barred by prior action for strict foreclosure of land sales contract). Accordingly, the trial court erred in offsetting the appellant's claim for rentals against the respondents' claim for waste.

■ Appellant also argues that the district court erred in ordering that the state land lease obtained by appellant be assigned to respondents. The original state land lease, dated January 1, 1963, was apparently granted to the respondents by the State Board of Land Commissioners pursuant to I.C. § 58–304, and under the provisions of I.C. § 58–307 that lease could not have had a term longer than ten years. Accordingly, the original lease expired no later than December 31, 1972, while the lease was in escrow. The record indicates that after this lease expired the appellant obtained a new lease in his own name.

Despite the fact that the original lease expired and the appellant obtained a new lease in his own name, it is clear from the parties' testimony at trial and the terms of the contract that the parties considered the original state land lease to be an integral part of the farm subject to the contract of sale. Since the parties obviously intended that the owner of the farm also have the rights to the state land lease and since the original state land lease was part of the property subject to the contract of sale, we conclude that on remand the district court should order the current state land lease to be assigned to the purchaser of the farm at the judicial sale and that the lease as well as the farm property be subject to the appellant's right of redemption.

Lastly, appellant challenges the trial court's award of attorney fees to the respondents and the inclusion of that award in the sum to be raised by the judicial sale. The trial court's judgment does not indicate whether the award of attorney fees was made pursuant to the provision in the contract or pursuant to I.C. § 12–121. The contract provided:

"It is further agreed that if it becomes necessary for the Vendors to bring an action in any court of competent jurisdiction for the enforcement of this contract for the repossession of said premises upon failure of the Purchasers to make the payments and perform the covenants as herein specified, the Purchaser shall pay all court costs contracted by the Vendors, together with a reasonable attorney's fee."

■ Although the respondents' action for money damages and judicial sale may not have been the specific form of action contemplated by that provision for attorney fees, we conclude that when that provision is read together with the other contractual provisions on remedies, which provide that the forfeiture remedy is not exclusive but cumulative to other remedies, it becomes apparent that the parties intended that the vendors be entitled to an award of attorney fees in the event judicial action was necessary to enforce the terms of the contract. *See Scogings v. Andreason,* 91 Idaho 176, 418 P.2d 273 (1966). Accordingly, the trial court's award of attorney fees to the respondents was proper under that contractual provision.

■ At the oral argument of this appeal it was brought to the Court's attention that despite the appellant's appeal the respondents proceeded with the judicial sale of this property and that the sale has already taken place. We note that our reversal of the money judgment entered by the trial court and order that it be modified on remand does not require that the judicial sale be set aside but only that the respondents restore to the appellant the excess amount

of the net proceeds received. However, if that result would be inequitable, the trial court may set aside the sale. *See Thompson v. Thompson,* 233 Or. 262, 378 P.2d 281 (1963); Annot., 32 A.L.R.3d 1019 (1970); Annot., 29 A.L.R. 1071 (1924).

We have reviewed the other allegations of error asserted by appellant and find that they are without merit or were not asserted in the trial court and thus are not reviewable on appeal, *Unigard Insurance Group v. Royal Globe Insurance Co.,* 100 Idaho 123,

594 P.2d 633 (1979); *Bair v. Barron,* 97 Idaho 26, 539 P.2d 578 (1975).

No costs allowed.

Affirmed in part and reversed in part.

DONALDSON, C. J., and SHEPARD, McFADDEN and BISTLINE, JJ., concur.