510

William J. Owens, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and G. A. & F. C. Wagman, Inc., Respondents.

Argued September 14, 1978, before Judges CRUMLISH, JR., ROGERS and CRAIG, sitting as a panel of three.

*John R. Lenahan, Jr.,* with him *Robert J. Beirne,* and *Beirne, Riffle and Foster,* for petitioner.

*Franklin R. Innes,* with him *W. Marshall Dawsey,* and *Griffin and Dawsey,* for respondent.

Opinion by Judge Crumlish, Jr., January 3, 1979:

William J. Owens (Claimant) appeals a decision of the Workmen's Compensation Appeal Board (Board) which reversed the referee's award of compensation benefits.

Claimant was employed as a pile driver for approximately 11 years by G. A. & F. C. Wagman, Inc. (Employer), a bridge construction company. His job involved the lifting and setting of steel beams weighing from 20 to 100 pounds per running foot. Beginning in April, 1974, Claimant experienced intermittent pain in the shoulder, head and neck areas. The pain became increasingly severe and eventually debilitating, obliging Claimant to terminate his employment.

The record gives us the following chronology of events leading to Claimant's termination:

1. On April 15, 1974, Claimant was admitted to the Emergency Room of the Robert Packer Hospital complaining of pain in the back of his neck and his left shoulder which had been persisting for the prior two to three weeks. The treating physician found spasms of the cervical muscle group, and x-rays pictured osteoarthritis of the cervical spine. Claimant was prescribed a cervical collar and muscle relaxants.

2. Claimant returned to his physician on April 24, 1974, complaining of no improvement. Traction and heat massage were prescribed and medication was continued.

3. Claimant again visited his physician on May 1, 1974. Although he continued to experience pain in his left shoulder, improvement was apparent. He was instructed to return to work.

4. On May 13, 1974, Claimant returned for re-examination complaining that as the result of lifting a steel beam, he injured his back, shoulder and neck to the extent that he was unable to raise his arms

above his head. An examination revealed an acute strain of the muscle group that lies along the spine.

5. A re-examination on May 17 revealed that Claimant's back pain was considerably improved and he was instructed to return to work.

6. On July 11, 1974 Claimant returned for examination and it was determined that he was suffering from a chronic cervical strain.

7. On October 9, 1974, Claimant was examined once again when he was advised that he had a chronic cervical strain with possible discogenic disease of the cervical spine. His physician told him that he was unable to work in his present condition and was referred to an orthopedic surgeon. An examination by the orthopedic surgeon on October 6, 1974, revealed severe osteoarthritis, with cervical root irritation in the 5th, 6th and possibly the 7th cervical nerves. He was advised that he was not capable of carrying on his work.

Claimant, on August 4, 1975, filed a claim petition for compensation benefits. At a referee's hearing, Claimant could not attribute the onset of the pain which he experienced in April, 1974, to any particular work-related incident. However, he did say that as he continued to work, the pain worsened. Claimant testified that while lifting a steel beam, he felt something give in his back, which occurred some two weeks prior to his May 13, 1974 examination.

Compensation benefits were awarded by the referee, who made the following pertinent findings of fact:

8. We find as a fact that the claimant originally suffered a work-related injury on or about April 1, 1974 while working for the [Employer] when due to the heavy and stressful work he was performing in mud and water at the time, he suffered an acute cervical strain. . . .

The claimant had suffered a second work-related injury on May 13, 1974 when he lifted a steel beam. . . .

. . . .

13. We find as a fact that the claimant had been suffering from a pre-existing osteo-arthritic condition. . . .

We also find as a fact that the severe pre-existing arthritic condition suffered by the claimant had been the result of heavy and stressful work and working conditions the claimant had been exposed to while working for the [Employer] over a period of approximately eleven years prior to the date of the injuries in this case.

Without taking additional evidence, the Board reversed the referee finding that the testimony lacked medical evidence in support of the causal connection between the injury and Claimant's employment.

Claimant's physician's testimony is replete with evidence that Claimant's condition worsened each time he performed his work-related duties. The doctor's findings of increased muscle spasm and cervical strain corroborate Claimant's complaint of pain. The physician's description of osteoarthritis as a progressive disease which is the result of continuous aggravation caused by "stressful work" over a long period of time, satisfied us that the findings of the referee are supported by the record.[1] He defined at length "stressful work" which would cause this disease and testified that Claimant's work was appropriately re-

---

[1] We must determine only whether or not constitutional rights were violated, an error of law was committed, or a necessary finding of fact was unsupported by substantial evidence, leaving questions of evidentiary weight and credibility to the referee. *Bethlehem Mines Corp. v. Workmen's Compensation Appeal Board*, 34 Pa. Commonwealth Ct. 519, 386 A.2d 1074 (1978).

lated, and also said that normal household duties, such as gardening, were not the usual kinds of activities which would lead to Claimant's present physical impairment.

Employer cites the following testimony of the doctor in support of its contention that the physician's testimony was equivocal:

Q. In view of your understanding of the nature of Mr. Owens' work, is it your opinion . . . do you have an opinion as to whether or not that kind of activity would be such an activity as to aggravate the conditions of which Mr. Owens complains to the extent of his present physical condition?

A. Yes. I think the type of work he was doing could lead to the osteoarthritis of such a severe nature that he developed this cervical root irritation.

A cursory glance at this specific observation taken apart from the entire record would be arguably less than unequivocal. However, as we have said before, the mere incantation of a magic word or phrase will not necessarily preclude the recovery of benefits where the referee who personally heard the testimony determined that the requisite causation was present and where the record, considered in totality, supports that determination. *Workmen's Compensation Appeal Board v. Bowen*, 26 Pa. Commonwealth Ct. 593, 364 A.2d 1387 (1976).

Our review of the record convinces us that the findings of the referee are supported by substantial evidence.

Accordingly, we

ORDER

AND Now, this 3rd day of January, 1979, the decision of the Workmen's Compensation Appeal Board

is hereby reversed and the award of the referee is hereby reinstated. It is ordered that judgment be entered in favor of Claimant, William J. Owens, and against defendant, G. A. & F. C. Wagman, Inc. The defendant's insurance carrier is directed to pay compensation for total disability at the rate of $106.00 per week from April 15, 1974 to May 29, 1974, inclusive, subject to the periods in which health and accident benefits were paid to Claimant by the Connecticut General Insurance Company during which periods the compensation payments shall be prorated as stated below.

Beginning May 30, 1974, the compensation payments are to be suspended continuing to May 31, 1974, inclusive.

Beginning June 1, 1974, the defendant's insurance carrier is directed to pay Claimant compensation for total disability at the rate of $106.00 per week from June 1, 1974 to March 18, 1976, the date of hearing and indefinitely thereafter, subject to the provisions and limitations of the Act, with the exception of a two-day period beginning July 1, 1974 that Claimant worked to July 2, 1974, inclusive, during which period the compensation payments are suspended.

Deferred payments of compensation shall bear interest at the rate of ten percent (10%) per annum from the due date thereof.

The Connecticut General Insurance Company, Hartford, Connecticut 06115, is subrogated to receive compensation payments for the following period at the rate of $69.55 per week from April 15, 1974 to May 28, 1974, inclusive, with the remainder of the compensation, $36.45, to be paid to Claimant for said period.

The insurance carrier is directed to pay the following medical and hospital bills:

Robert Packer Hospital, Sayre,
Pennsylvania $ 248.50

Guthrie Clinic — Robert Packer
Hospital, Sayre, Pennsylvania 8.75

York Hospital, York, Pennsyl-
vania 15.00

The insurance carrier is directed to reimburse Claimant for the following medical bills:

Dr. William H. Steinbach,
Northeastern Bank Building,
Scranton, Pennsylvania $ 55.00

Athens Pharmacy prescription
bill 21.56

The Connecticut General Insurance Company, Hartford, Connecticut 06115, is subrogated to receive payment in the amount of $49.50 for the Robert Packer Diagnostic X-Ray Laboratory charge.

No bill of cost is taxed.

A counsel fee of twenty percent (20%) of the award is granted which shall be paid by Claimant.