602 P.2d 18

Marlene G. SMITH,
Claimant-Respondent,

v.

DEPARTMENT OF EMPLOYMENT,
Defendant-Appellant.

No. 12172.

Supreme Court of Idaho.

June 25, 1979.

R. LaVar Marsh, Deputy Atty. Gen., Boise, for defendant-appellant.

Norman Vieira, College of Law, Univ. of Idaho, Moscow, Philip E. Peterson, Lewiston, for claimant-respondent.

BAKES, Justice.

Claimant appellant Marlene G. Smith worked for several years as a retail clerk in a Boise department store before losing her job through no fault of her own in the spring of 1975. While she had been employed as a retail clerk her working hours started at 9:30 a. m. and ended early enough to enable her to take evening classes at Boise State University. When she became unemployed Smith enrolled in early morning summer classes at Boise State, attending class from 7:00 a. m. to 9:00 a. m. five days a week for the first half of the summer semester and from 7:00 a. m. to 8:30 a. m. five days a week for the second half. The Department of Employment denied unemployment compensation benefits for the weeks during which she attended these early morning classes upon the authority of I.C. § 72–1312(a). That statute provides the following:

"[N]o person shall be deemed to be unemployed while he is attending a regular established school excluding night school . . . ."

Claimant Smith appealed the Department's decision to the Idaho Industrial Commission which reversed the Department's determination, finding that Smith was available for work during the weeks she had taken summer classes and, based upon our decision in *Kerr v. Department of Employment*, 97 Idaho 385, 545 P.2d 473 (1976), awarded her unemployment compensation benefits for those weeks. The Department appealed the Industrial Commission's decision to this Court, and we affirmed, holding that denial of unemployment benefits to otherwise eligible persons attending school during the day, while allowing students attending classes at night to receive benefits, violated the equal pro-

tection clause of the fourteenth amendment of the United States Constitution. *Smith v. Department of Employment*, 98 Idaho 43, 557 P.2d 637 (1976). The Department of Employment appealed our decision to the Supreme Court of the United States. That court reversed, holding that since the legislative classification involved the regulation of economic activity and the distribution of economic benefits, the requirements of the equal protection clause would be met if the classification had some rational basis. That court found that:

"It was surely rational for the Idaho Legislature to conclude that daytime employment is far more plentiful than nighttime work and, consequently, that attending school during daytime hours imposes a greater restriction upon obtaining full-time employment than does attending school at night." *Idaho Department of Employment v. Smith*, 434 U.S. 100, 101, 98 S.Ct. 327, 328, 54 L.Ed.2d 324, 327 (1977).

On remand from the Supreme Court of the United States, claimant Marlene Smith urges that the legislative classification in question, although not violative of the equal protection clause of the United States Constitution, does violate the Constitution of the State of Idaho. We do not reach the state constitutional issue raised by claimant Smith because we conclude that the statute does not bar receipt of unemployment compensation benefits by claimant Smith. *State v. Lindquist*, 99 Idaho 766, 589 P.2d 101 (1979); *Poesy v. Bunney*, 98 Idaho 258, 561 P.2d 400 (1977).

The Idaho Employment Security Act was enacted to help alleviate the economic and social hardships caused by unemployment which did not result from the fault of the employee. I.C. § 72–1302.[1]

1. "72–1302. DECLARATION OF STATE PUBLIC POLICY.—(a) As a guide to the interpretation and application of this act, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Involuntary unemployment is therefore a subject of national and state interest and concern which re-

quires appropriate action to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods

The Act must be liberally construed to effect that purpose. *In re Potlatch Forests, Inc.*, 72 Idaho 291, 240 P.2d 242 (1952). The narrow question presented by this appeal is whether I.C. § 72–1312(a) precludes claimant Marlene Smith from receipt of unemployment compensation benefits because of her attendance at early morning classes at Boise State University. We conclude that the statute does not preclude receipt of benefits by Smith.

■■■ Statutes should be interpreted to mean what the legislature intended them to mean and to accomplish what the legislature sought to achieve by their passage. "Moreover, enactments of the legislature are to be interpreted to accord with common sense and reason." *State ex rel. Newsom v. Alarid*, 90 N.M. 790, 794, 568 P.2d 1236, 1240 (1977). When the language of a statute is ambiguous, we must consider the social and economic results which would be effectuated by a decision on the meaning of the statute. *Herndon v. West*, 87 Idaho 335, 393 P.2d 35 (1964). Policy grounds and reasonableness may also be utilized to determine the meaning of a statute. *Summers v. Dooley*, 94 Idaho 87, 481 P.2d 318 (1971).

> "We are entitled to, and must look to the intention of the Legislature as gathered from the whole act, and when a literal reading of a provision will work an unreasonable or absurd result, if a reasonable intent of the Legislature can be arrived at, the court should so construe the act as to arrive at such intention rather than an absurdity." *Smallwood v. Jeter*, 42 Idaho 169, 184, 244 P. 149, 153 (1926).

*See also Herndon v. West*, 87 Idaho 335, 393 P.2d 35 (1964).

■ The Department of Employment maintains that the provision of I.C. § 72–1312(a) which governs this case is unambiguous and that its plain language compelled denial of benefits to claimant Smith upon her enrollment in classes meeting during the daytime at Boise State University. However, nowhere in the Employment Security Act is the term "night school," as used in I.C. § 72–1312(a), defined. Webster's Third New International Dictionary defines night school as:

> "School held in the evening; *specif*: a course offered (as by a university or high school) for people in working life and often stressing vocational training and recreational activities as well as general education."

While the classes involved in this case were not conducted in the evening, the evidence does indicate that the classes could be characterized as "offered for [a person] in working life."

If I.C. § 72–1312(a) is interpreted literally, night school would only include those schools which operate after sundown. While in winter sundown occurs as early as 5:00 p. m., during summer months daylight lasts as late as 9:30 p. m. in Boise, Idaho. The record does not indicate if there are any schools in Idaho which operate only after sundown. If the language "night school" is interpreted to mean "night classes," the same class which would start as a night class in winter might not conclude as a night class when the course ended in the late spring or summer. Similarly, claimant's 7:00 a. m. class would be a night class during the winter and a day class during the summer. It is obvious that such a literal construction is unreasonable and absurd, and we must construe the statute to preclude such results. *Smallwood v. Jeter, supra.*

In order to construe this section of the Employment Security Act to be consistent with the purposes of the act, *i. e.*, to provide unemployment compensation to those per-

---

of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that, in its considered judgment, the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, and for the compulsory setting aside of unemployment reserves to be used for the benefits of persons unemployed through no fault of their own.

. . . ."

sons who are unemployed through no fault of their own, who are desirous of employment, and who are not engaging in any activity which would preclude their availability for full time work, we conclude that the language of I.C. § 72–1312(a) permits receipt of benefits by an otherwise eligible claimant whose enrollment in school does not affect the claimant's availability for suitable full time employment.

In proceedings before the Industrial Commission following the Department of Employment's determination that claimant Smith was ineligible for unemployment compensation benefits, the Commission found that Smith's class attendance "has not affected her availability for full time work." Based upon this finding and our decision in *Kerr v. Department of Employment*, 97 Idaho 385, 545 P.2d 473 (1976), the Commission awarded Smith benefits. Although it has subsequently been determined by the Supreme Court of the United States that the *Kerr* case is not a correct interpretation of the fourteenth amendment of the United States Constitution, *Department of Employment v. Smith*, 434 U.S. 100, 98 S.Ct. 327, 54 L.Ed.2d 324 (1977), the finding made by the Industrial Commission that Smith was available for work in the summer of 1975 entitles her to receive benefits under the interpretation of I.C. § 72–1312(a) we adopt today. Any language in the decision of this Court in *Swanson v. Employment Security Agency*, 81 Idaho 385, 342 P.2d 714 (1959), which is inconsistent with our decision today is disapproved.

We therefore affirm the Industrial Commission's award of unemployment compensation benefits made in the Industrial Commission order dated February 9, 1976, entered in this case.

Affirmed. Costs to respondent Smith.

SHEPARD, C. J., DONALDSON and BISTLINE, JJ., and SMITH, J. Pro Tem., concur.