672 P.2d 1055

**Donald E. MILLER, Claimant-Respondent,**

v.

**AMALGAMATED SUGAR COMPANY, Employer-Appellant.**

**No. 14689.**

Supreme Court of Idaho.

Nov. 30, 1983.

Steven Arthur Adamson, of Adamson & Young, Nampa, for employer-appellant.

Jerry Goicoechea and Lynn M. Luker, Boise, for claimant-respondent.

SHEPARD, Justice.

This is an appeal from a decision of the Industrial Commission in which an award was made for a disability suffered by claimant from an occupational disease contracted during his employment with appellant Amalgamated. We affirm in part and reverse in part, and remand for additional proceedings.

Miller was employed at Amalgamated's Nampa plant for some 24 years as a welder and mechanic, and the nature of his duties required him to work over the entire area of the plant rather than at any one location. He spent most of that time working on and in the immediate vicinity of various heavy machines. For some time prior to 1979, Miller had experienced some difficulty with his hearing. Miller retired from employment in January 1979. After retirement, Miller's hearing continued to worsen and he consulted a Dr. Goltry, who diagnosed a sensorineural hearing loss, which was probably due to noise exposure. That diagnosis was made on October 31, 1980, and shortly thereafter Miller made claim against Amalgamated for the cost of a hearing aid, which demand was denied by the company, and on February 24, 1981, Amalgamated advised Miller that it felt no obligation to compensate him for any hearing problem he might have. The instant claim for compensation was filed with the Commission approximately March 19, 1981.

We note at the outset several unusual facets of the procedure before the Commission. The parties stipulated that the procedure before the Commission should be bifurcated with the Commission first addressing the issue of whether a hearing loss due to noise exposure in connection with a claimant's employment constitutes an occupational disease. The parties further stipulated the facts relevant to that issue and that "details supporting the employer's position, and the claimant's dispute of that position will be filed with the Industrial Commission, in brief form, * * *." Following submission of briefs, the Commission entered its findings of fact, conclusions of law, and order as to that portion of the

bifurcated procedure holding that a loss of hearing could constitute an occupational disease compensable under Idaho's Workmen's Compensation Law and that Miller's hearing loss was contracted and incurred during his employment with Amalgamated.

Thereafter, the parties again stipulated that the remaining issues would be submitted to the Commission for decision on the basis of the record, including the deposition testimony of Dr. Goltry and the briefs of the parties. Hence, the facts before the Commission were essentially undisputed and only the conclusions to be drawn from those facts and the appropriate law to be applied remained in dispute between the parties. After such stipulation and the submission of the matter to the Commission, Amalgamated attempted to introduce an affidavit of a supervisor at its plant, but that affidavit was rejected by the Commission on the basis that such would violate the stipulation to submit the matter on the then existing record. Although this rejection is asserted as error on this appeal, we disagree. In view of the parties' stipulation, the decision of the Commission to reopen or not reopen the record lay in its discretion and no abuse thereof has been shown. We find no error in that action of the Commission.

Thereafter, the Commission filed its findings of fact, conclusions of law, and order as to the remaining issues. The Commission concluded that an occupational disease is first manifested when an employee first learns that a condition is the result of an occupational disease and that Miller's occupational disease was first manifested on October 31, 1980, when he received the advice of Dr. Goltry. The Commission also concluded that, although Miller did not provide a written notice to the employer within 60 days, Miller did provide information to the employer and seek benefits from the employer immediately following October 31, and that such notice was sufficient and that the employer was not prejudiced by lack of a written notice. The Commission further concluded that Miller suffers a permanent physical impairment of 14% of the whole

man and is disabled to that extent. Miller concedes that his disability is equivalent to his physical impairment. From that decision and award, Amalgamated appeals. Miller contends on this appeal that Amalgamated is foreclosed from raising any issue decided by the Commission in its first findings, conclusions, and order but we disagree and decide the entire cause on its merits.

Although Amalgamated, both here and before the Commission, argued that a gradual loss of hearing does not constitute an occupational disease, no authority is cited for that position and we note the great weight of authority is to the contrary. *See, e.g., Martinez v. Industrial Commission,* 40 Colo.App. 485, 580 P.2d 36 (1978); *Armco Steel Corp. v. Trafton,* 35 Md.App. 658, 371 A.2d 1128 (1977); *Myers v. State Workmen's Compensation Comm'r.,* 239 S.E.2d 124 (W.Va.1977); *Green Bay Drop Forge Co. v. Industrial Commission,* 265 Wis. 38, 60 N.W.2d 409 (1953); *Rosati v. Despatch Shops, Inc.,* 298 N.Y. 813, 83 N.E.2d 860 (1949); *Slawinski v. Williams & Co.,* 298 N.Y. 546, 81 N.E.2d 93 (1948); *see also* 1B A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 41.50 (1982). The decision of the commission correctly noted that the list of diseases enumerated in I.C. § 72–438 is not exclusive. The commission also considered and applied this Court's decision in *Bowman v. Twin Falls Const. Co.,* 99 Idaho 312, 581 P.2d 770 (1978). We deem the instant facts even more compelling than *Bowman* since here the commission, as arbiter of the facts, has determined the existence of an occupational disease. We affirm that decision of the commission.

Amalgamated argues strenuously that no legitimate evidence indicates causation, *i.e.,* that Miller's hearing loss resulted from his employment. We disagree. Again, we call attention to the manner in which this cause was submitted to the Commission by way of stipulated facts, the deposition of Dr. Goltry, and the briefs of the parties. Attached to the brief of Miller before the Commission were reports of OSHA inspections and violation reports of Amalgamated's Nampa plant, which related to excessive noise levels. Those documents were referred to in the deposition testimony of Dr. Goltry. Those OSHA documents were referred to and utilized by the Commission in arriving at its conclusion that Miller was subjected to excessive noise levels during his employment. The Commission then further concluded that the medical evidence established that such excessive noise levels probably contributed to the hearing loss of Miller. We hold that such evidence was sufficient foundation upon which to base the Commission's findings and conclusions in which it held that the excessive noise level at Amalgamated's plant was the cause of Miller's industrial disease, *i.e.,* hearing loss. We affirm that portion of the decision of the Industrial Commission. We further note that before the commission no apparent objection was made to the commission's consideration of those OSHA documents and therefore Amalgamated's assertion of error at this point regarding the consideration of the OSHA documents cannot be accepted. *See Texas Oklahoma Express v. Sorenson,* 652 P.2d 285 (Okl.1982).

Amalgamated argues that the commission erred when it held Miller suffers a permanent physical impairment of 14% of the whole man. We disagree. The only medical testimony elicited clearly supports that finding, there is no evidence to the contrary, and hence the finding is affirmed. *Green v. Columbia Foods,* 104 Idaho 204, 657 P.2d 1072 (1983); *Lampe v. Zamzow's, Inc.,* 102 Idaho 126, 626 P.2d 782 (1981); *Logsdon v. Northern Iron & Metals Co.,* 101 Idaho 74, 608 P.2d 877 (1980).

Amalgamated also argues that the commission erred in finding that Miller's hearing loss first manifested itself on October 31, 1980. The commission concluded that an occupational disease is first manifested when an employee first learns that the condition is the result of an occupational disease or to conditions which are related to his employment. The commission pointed out that Miller first learned that his hearing loss was attributable to noise expo-

sure during his employment when he was examined by Dr. Goltry on October 31, 1980. A number of jurisdictions have held that an occupational disease does not manifest itself, for the purpose of notice and filing provisions, until "the employee is first informed by competent medical authority of the nature and work related cause of the disease." *Taylor v. J.P. Stevens Co.,* 300 N.C. 94, 265 S.E.2d 144 (1980); *see also McKinney v. Feldspar Corp.,* 612 S.W.2d 157 (Tenn.1981); *Fulks v. Avondale Shipyards, Inc.,* 637 F.2d 1008 (5th Cir.1981), *cert. denied* 454 U.S. 1080, 102 S.Ct. 633, 70 L.Ed.2d 613 (1981); *Murphy v. Hopkins & Reilly Mason Contractors,* 83 A.D.2d 734, 442 N.Y. S.2d 615 (1981); *Garrison v. Prince William Ct. Bd. of Sup'rs,* 220 Va. 913, 265 S.E.2d 687 (1980); *Gilbertson v. Department of Labor & Industries,* 22 Wash.App. 813, 592 P.2d 665 (1979); *Frisby v. International Paper Co.,* 76 So.2d 621 (La.Ct.App.1954). We approve and adopt that standard in keeping with our legislative policy that workmen's compensation provisions be construed liberally in favor of the claimant. I.C. § 72–201; *Hattenburg v. Blanks,* 98 Idaho 485, 567 P.2d 829 (1977); *Miller v. FMC Corp.,* 93 Idaho 695, 471 P.2d 550 (1970); *Kiger v. Idaho Corp.,* 85 Idaho 424, 380 P.2d 208 (1963). We affirm the commission's finding of the date of the manifestation of the occupational disease.

■ Amalgamated next argues that the commission erred when it held that claimant's oral notice was sufficient to satisfy the notice and claim requirements of I.C. § 72–448. We disagree. The commission found that immediately following the first diagnosis of hearing loss, the claimant submitted that information to the employer which on November 12, 1980, denied any compensation benefits to the claimant. The commission in effect found that the employer had actual notice and specifically held that the employer was not prejudiced by lack of a written notice. The record contains no evidence contrary to those findings and holding, and hence the ruling of the commission relating to oral notice is affirmed. *McCoy v. Sunshine Mining Co.,* 97 Idaho 675, 551 P.2d 630 (1976).

■ Amalgamated next argues that the commission erred in its holding that claimant Miller had complied with the provisions of I.C. § 72–448, "Notice of contraction of disease and claim for compensation," and asserts that since here, even assuming that the notice was adequate as above discussed, nevertheless that notice was not given within five months after claimant's employment had terminated. Here, admittedly, claimant's notice had been given to employer only after the expiration of approximately 21 months following the termination of employment. As above noted, our statute and case law require that in accord with legislative policy, workmen's compensation statutes are to be construed most favorably in favor of the claimant. Amalgamated's argument, if taken literally, would require the denial of any claim for industrial disease compensation (excepting only silicosis or diseases relating to radioactivity or ionizing radiation, *see* I.C. § 72–448) if the disease did not manifest itself within five months after the termination of employment. We further note that I.C. § 72–448(2) provides that in

> "unusual cases of occupational diseases, written notice may be given any time and a claim filed within one (1) year after the date upon which the employee first suffered incapacity, disability or death from such exposure and knew or in the exercise of reasonable diligence should have known that the occupational disease was caused by his present or prior employment."

The commission found that claimant's application for hearing was filed with the commission within one year after the manifestation of his occupational disease, which occurred on October 31, 1980. We deem that the commission implicitly assumed that since the disease did not manifest itself until some 20 months following claimant's termination of employment that such constituted one of the "unusual cases of occupational diseases" referred to in I.C. § 72–448(2), and hence the case fell within the purview of that statute. If such be the reasoning of the commission, we do not

**730**

disagree.[1] However, the commission neither found nor concluded that the instant matter fell within the purview of I.C. § 72–448(2), that the instant case was an unusual case of occupational disease, or at what point in time the claimant "knew or in the exercise of reasonable diligence should have known that the occupational disease was caused by his present or prior employment." Hence, the award of the commission must be set aside and the cause remanded to the commission for a determination of the above matters.

The decision and award of the Industrial Commission is affirmed in part, reversed in part, and remanded to the commission for further proceedings consistent herewith. No costs allowed. No attorneys' fees allowed.

DONALDSON, C.J., and BAKES, BISTLINE and HUNTLEY, JJ., concur.

1. In 1B A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 41.50 (1982), Professor Larson discusses a recommendation that hearing loss due to occupational noise not be evaluated for a period of six months after the employee is removed from the noisy environment, due to peculiarities of hearing loss as an occupational disease.