792 P.2d 330

**Marilyn KINNEY,**
**Claimant–Respondent,**

v.

**TUPPERWARE COMPANY, Employer, and Standard Fire Insurance Company, Surety, Defendants–Appellants.**

**No. 17954.**

Supreme Court of Idaho.

May 17, 1990.

---

Imhoff & Lynch, Boise, for defendants-appellants. Thomas P. Baskin, III, argued.

 Goicoechea Law Office, Twin Falls, for claimant-respondent. James C. Arnold, argued.

McDEVITT, Justice.

Claimant Kinney was initially employed by Tupperware, in Jerome, Idaho, where she worked as a molding machine operator from July 29, 1985, until April 10, 1986. During this time she experienced no hand or wrist problems whatsoever. On or about April 10, 1986, Kinney left her employment with Tupperware and moved to the state of Missouri. Approximately one year later, she returned to Jerome, where on July 27, 1987, she was once again employed as a molding machine operator at Tupperware. She worked full-time for a total of fifty-six days at the Tupperware facility during her second period of employment.

Kinney alleges that as a result of repetitious work tasks which she performed at Tupperware during her second period of employment, she developed Carpal Tunnel Syndrome. She initially discussed the numbness in her fingers and pain in her lower arm with her coordinator at Tupperware. As a result, the coordinator moved her to a different molding machine to see if this would alleviate the problem. It did

not. On October 12, 1987, Kinney sought medical assistance. She initially saw one Dr. Slickers. He suspected Carpal Tunnel Syndrome, or tenosynovitis, and prescribed splinting for at least one week. This did not seem to help, so he prescribed continued splinting and referred Kinney to an orthopedic surgeon, Dr. Howar, for evaluation. Dr. Howar saw Kinney for the first time on October 29, 1987. By letter of the same date, he conveyed the findings of his examination to Dr. Slickers. The letter stated in significant part:

> As you know, she [Kinney] is a right-handed machine operator at Tupperware who has been having pain and paresthesia in her hand since July, this has gotten worse over the last month. There has been no injury that she can recall. She is not diabetic or hypothyroid and believe she is not pregnant....

Dr. Howar referred Kinney to Dr. Allen Schaffert for nerve conduction studies. Those studies demonstrated prolonged sensory latencies in both hands, but more so in the left hand. On November 10, 1987, Dr. Howar recommended that Kinney undergo bilateral carpal tunnel release.

By letter to defense counsel dated January 14, 1988, Dr. Howar stated that Kinney's Carpal Tunnel Syndrome had developed as one would normally expect, *i.e.,* gradually and without any history of sudden onset. One sentence in this letter is of particular import. It states: "It would appear that this patient's symptoms began in mild form in July of 1987, and worsened rather suddenly in October." This description of the "sudden onset" of the incident is significant.

By a letter dated March 9, 1988, addressed to Kinney's attorney, Dr. Howar once again reiterated the history taken from Kinney on October 29, 1987. Significantly, he stated:

> When I examined Mrs. Kinney on October 29, her Carpal Tunnel Syndrome was acute. Her symptoms began during the course of her employment with Tupperware, and it appears probable that a Carpal Tunnel Syndrome is work related.

Kinney filed an application for a hearing before the Industrial Commission on or about December 23, 1987. On June 14, 1988, the matter was heard by Robert Youngstrom, referee for the Industrial Commission. At the time of the hearing, Kinney testified that she did not think that her wrist problems were caused by a specific accident or traumatic event. But, Kinney did testify that she thought that her wrist problems were caused by the constant repetitive hand movement encountered in her job as a molding machine operator. In addition to Kinney's testimony, the record before the Commission contained copies of Dr. Howar's letters and numerous treatises on Carpal Tunnel Syndrome.

Following the conclusion of the hearing, Judy Davis Trotter testified for the defense by way of post-hearing deposition. Trotter was an occupational therapist registered through the American Occupational Therapy Association and licensed as an occupational therapist in Idaho. She had seven years of experience in the Twin Falls area. She specialized in upper extremity rehabilitation. She testified that in the industrial setting, Carpal Tunnel Syndrome may be caused by inflammation of the structures of the carpal space by repetitive work activities or trauma.

Tupperware provided Trotter with data concerning Kinney's tasks in 1987. With this information, Trotter concluded that Kinney performed her job tasks at a low repetitive cycle, albeit at the high end of the low repetitive cycle. Trotter stated that in her opinion, Kinney's employment at Tupperware in 1987 was nothing more than a possible cause of her Carpal Tunnel Syndrome. She also found that Kinney's first period of employment did not assist in causing Kinney's Carpal Tunnel Syndrome. It should be noted that Trotter completed a full analysis of only two of the six or more job tasks Kinney was required to perform while working at Tupperware.

The Commission entered its Findings of Fact and Conclusions of Law and Order on January 9, 1989. It determined that Kinney had met her burden of proving, by

substantial and competent evidence, that her Carpal Tunnel Syndrome was caused by her work at Tupperware. Thus, the Commission determined that Kinney was entitled to compensation for an occupational disease.

The defendants Tupperware and Standard Fire Insurance Company appeal arguing that the Commission erred in finding that: 1) Carpal Tunnel Syndrome constitutes an occupational disease; 2) there was substantial and competent evidence to support the finding that Kinney suffered from an acute occupational disease; 3) regardless of whether she suffered an acute occupational disease Kinney still had a valid claim; and, 4) there was substantial and competent evidence that the ailment was caused by conditions at Tupperware.

## I.

█ Appellants initially argue that in ruling that Carpal Tunnel Syndrome constitutes an occupational disease, the Industrial Commission has misconstrued I.C. § 72–438, and in particular, subsection 12 of that statute. We disagree.

Carpal Tunnel Syndrome does constitute an occupational disease under I.C. § 72–102(17), and the mere fact that it is not listed in I.C. § 72–438 does not preclude the Industrial Commission from finding and concluding that it is an occupational disease in the instant case.

The introductory phrase and subparagraph 18(a) of I.C. § 72–102 state:

Words and terms used in the workmen's compensation law, unless the context otherwise requires, are defined in the subsections which follow.

(17) "Occupational diseases."

(a) "Occupational disease" means a disease due to the nature of an employment in which the hazards of such disease actually exist, are characteristic of, and peculiar to the trade, occupation, process, or employment.

The introductory phrase and subparagraph 12 of I.C. § 72–438(12) state:

Compensation shall be payable for disability or death of an employee resulting from the following occupational diseases:

(12) Cardiovascular or pulmonary or respiratory diseases of a paid fireman, employed by a municipality, village or fire district as a regular member of a lawfully established fire department, caused by overexertion in times of stress or danger or by proximate exposure or by cumulative exposure over a period of four (4) years or more to heat, smoke, chemical fumes or other toxic gases arising directly out of, and in the course of, his employment.

*Recognizing that additional toxic or harmful substances or matter are continually being discovered and used or misused,* the above enumerated occupational diseases are not *intended* to be exclusive, *but such additional diseases shall not include hazards which are common to the public in general and which are not within the meaning of section 72–102(178)(a)* [sic] [1], *Idaho Code,* and the diseases enumerated in subsection (12) pertaining to paid firemen shall not be subject to the limitations prescribed in section 72–439, Idaho Code. (Emphasis added.)

Appellants note that the italicized portions of the statute were added by a 1981 amendment and that prior to this amendment, subsection (12) where "intended" now appears read: "the above enumerated occupational diseases are not to be taken as exclusive, ..." Appellants urge that the 1981 amendment serves to tighten the scope of subsection (12) by making it applicable only to unnamed diseases caused by hazardous biotics or toxins, and that this renders prior case law obsolete.

We agree with appellants' argument that the legislature is presumed to have a reason, or reasons, for its statutory amendments. We do not agree that the reason for the 1981 amendment of I.C. § 72–438(12) was to limit the enumerated diseases that would qualify as occupational diseases to those caused by harmful biotics or toxins. This opinion is supported by the

---

**1.** The correct section number is 72–102(17)(a).

pertinent Idaho Code provisions. The above quoted passage from I.C. § 72–438(12) reads in part: "such additional disease shall not include hazards ... which are not within the meaning of section 72–102(178)(a)[sic]." In other words, such additional diseases shall include hazards which are within the meaning of I.C. § 72–102(17)(a). The text of I.C. § 72–102(17)(a) has not changed since prior to Kinney's action.[2] Accordingly, there is no reason to believe that the amendment to I.C. § 72–438(12) altered the "hazards ... within the meaning of section 72–102(178)(a)[sic], Idaho Code...." I.C. § 72–438(12).

■ The record in this case, as well as the appellants' own expert witness Judy Trotter, supports the Industrial Commission's finding that job risk factors (hazards) for the development of Carpal Tunnel Syndrome actually existed, were characteristic of, and particular to, the occupation, process, and employment of Kinney.

The 1981 amendments to I.C. § 72–438(12) added a category of toxic and harmful substances and required that "additional occupational disease ... not include hazards which are common to the public in general." It did not serve to limit or redefine previously defined "occupational disease" to be those caused by or having their source in "toxic or harmful substances" as urged by the appellant.

The 1981 amendment served to focus the Industrial Commission and the courts on another category of disease, not limit previous decisions of the Commission and this Court.

The "catch all" phrase of I.C. § 72–438(12) as described in *Bowman v. Twin Falls Constr. Co.*, 99 Idaho 312, 581 P.2d 770 (1978), was not diminished by the 1981 amendment.[3]

## II.

■ Appellants next argue that the record does not contain substantial and competent evidence to support the Commission's finding that Kinney's Carpal Tunnel Syndrome was "acute."

In addressing the appellants' argument, we note that the Industrial Commission's findings will be upheld if they are supported by substantial and competent evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Substantial evidence is more than a scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112 (9th Cir. 1975). The Worker's Compensation Act is to be construed liberally in favor of the claimant. The humane purposes which it seeks to serve leave no room for narrow, technical construction. *Hattenburg v. Blanks*, 98 Idaho 485, 567 P.2d 829 (1977).

The distinction between an "acute" and a "non-acute" occupational disease is important because under I.C. § 72–439, a claimant must demonstrate exposure to the hazards of a "non-acute" occupational disease for a period of sixty days for the same employer before liability can attach. *Bint v. Creative Forest Products*, 108 Idaho 116, 697 P.2d 818 (1985); *Jones v. Morrison–Knudsen Co.*, 98 Idaho 458, 567 P.2d 3 (1977).

■ The primary evidence relied on by the Industrial Commission in deciding that Kinney suffered an "acute" occupational disease was the ultimate opinion rendered by Kinney's attending physician, Dr. Howar. In its Conclusion of Law, No. III, the Commission found:

We believe that the characterization of a disease with respect to onset, severity and course is best made by the treating physician. In this case, Dr. Howar has characterized the Claimant's condition as acute, and the Referee concludes that there is sufficient evidence to support

---

2. This section was changed and recodified effective January 15, 1990. These changes are not relevant to this appeal.

3. Although dealing with a pre–1981 claim, this Court reaffirmed *Bowman* in *Miller v. Amalgamated Sugar Co.*, 105 Idaho 725, 672 P.2d 1055 (1983).

that conclusion. The Referee therefore concludes that the Claimant's claim is not barred by the provisions of Section 72–439 Idaho Code.

Dr. Howar's opinion was that Kinney's Carpel Tunnel Syndrome was acute. Also, the record shows that after the middle of August 1988, Kinney's condition changed. Kinney testified that approximately three weeks after she resumed work at Tupperware, she experienced a different kind of pain. The severe nature of her condition from that point forward did not progress in a mild, slow, or protracted fashion, but rather increased in a severe manner until she went to the doctor. Thus, there is substantial and competent evidence to support the Commission's factual findings and legal conclusions. While the Commission rather briefly supports its Conclusion of Law III, with Dr. Howar's appraisal of "the claimant's condition as acute," we must interpret this to mean that the disease and not the symptoms was "acute."

### III.

Because we hold that the Industrial Commission's determination that Kinney suffered an acute occupational disease, was supported by substantial and competent evidence, we need not address appellants' argument that the Industrial Commission erred in ruling that, regardless of whether she suffered an acute occupational disease Kinney still had a valid claim.

### IV.

Appellants next argue that the Industrial Commission erred in ruling that there was substantial and competent evidence of record to support the finding that Kinney's Carpal Tunnel Syndrome was caused by the conditions of her employment at Tupperware.

■ Absent evidence of abuse of discretion in weighing the evidence, and as long as the Commission's findings are supported by substantial and competent evidence, the Supreme Court will not disturb the Commission's findings on appeal. *Poss v. Meeker Machine Shop*, 109 Idaho 920, 712 P.2d 621 (1985). Consistent with its basic function, the Industrial Commission in the instant case weighed medical evidence and, as permitted in *Beaver v. Morrison–Knudsen Co.*, 55 Idaho 275, 41 P.2d 605 (1934), and *Arneson v. Robinson*, 59 Idaho 223, 82 P.2d 249 (1938), gave the opinions of Kinney's treating physician, Dr. Howar, more weight than the opinion of the defense's expert, Ms. Trotter, who was an occupational therapist and who did not examine or treat Kinney.

The appellants argue that Dr. Howar's opinion is not reliable because he did not indicate in his records that he is familiar with the nature and process of Kinney's employment. However, as Kinney argued before the Industrial Commission, there is no evidence in the record to support the defense's conclusion or inference.

■ Finally, the appellants argue that direct presentation to the Industrial Commission of articles and treatises pertaining to Carpal Tunnel Syndrome are irrelevant as to whether or not Kinney's employment caused her Carpal Tunnel Syndrome. We disagree.

Appellants' argument ignores the wording of Idaho Rules of Evidence 401 which they seek to invoke. Appellants' argument on this matter is further not persuasive because the Industrial Commission should not be, nor is it, governed by the same rules of evidence as courts of law. When the legislature created the Industrial Commission, it intended that proceedings before the Commission be as summary, economical, and simple as the rules of equity would allow. *See Duggan v. Potlatch Forests, Inc.*, 92 Idaho 262, 441 P.2d 172 (1968); *Hite v. Kulhenak Bldg. Contractor*, 96 Idaho 70, 524 P.2d 531 (1974); and I.C. § 72–601. The treatises of which appellants complain were made an exhibit to their expert's deposition and are before the Commission in this deposition. Appellants would limit the use of these "learned treatises" relied on by their expert to the proposition urged by their expert. These documents clearly indicate "repetitive motion" as described by Kinney in her work can cause "Carpal Tunnel Syndrome." The

treatises brought before the Commission without objection were properly considered by the Commission.

## V.

Kinney requests attorney fees on appeal, claiming that they are proper under *De Marco v. Stewart*, 107 Idaho 555, 691 P.2d 801 (Ct.App.1984), because appellants have raised no meaningful issue of law, but simply invite this Court to second guess the Industrial Commission on questions of fact. As we recently stated in *Swanson v. Kraft, Inc.*, 116 Idaho 315, 775 P.2d 629 (1989):

> I.C. § 72–804 (1973) provides for the award of attorneys fees against an employer or the employer's surety in worker's compensation cases, but not against a claimant. I.C. § 72–201 (1973) abolishes all civil actions and civil causes of action for personal injuries in cases covered by the worker's compensation system. I.C. § 12–121 (1988 Supp.) and I.R. C.P. 54(e)(1) (1987) do not apply to worker's compensation cases, since they provide for the award of attorney fees to a prevailing party in civil action.

*Swanson*, 116 Idaho at 322, 775 P.2d at 636.

Thus, attorney fees can be awarded against an unsuccessful employer or employer's surety who appeal a worker's compensation case to this Court. However, as this appeal is not "without reasonable grounds," we decline to grant attorney fees.

Costs to respondent.

BAKES, C.J., and BISTLINE, JOHNSON and BOYLE, JJ., concur.