810 P.2d 249

**Jerry DOLPH, Claimant–Appellant,**

v.

**HECLA MINING COMPANY,**
Defendant–Respondent.

No. 18606.

Supreme Court of Idaho,
Boise.

Feb. 20, 1991.

Rehearing Denied May 10, 1991.

John T. Mitchell, Coeur d'Alene, for claimant-appellant.

Evans, Keane, Koontz, Boyd, Simko & Ripley, Kellogg, for defendant-respondent. William F. Boyd filed the briefs.

JOHNSON, Justice.

This is a workers' compensation case. The only issue presented is whether there was substantial competent evidence to sup-port the Industrial Commission's finding that the claimant did not sustain an accident while at work which caused an injury. We hold that there was sufficient evidence to support the Commission's finding.

### I.
### THE BACKGROUND AND PRIOR PROCEEDINGS.

Jerry Dolph was employed as a miner by Hecla Mining Company. On a Monday morning, Dolph informed Hecla that he had injured his knee at work the previous Friday and had to see a doctor. Dolph visited a doctor the following day and was referred to an orthopedic specialist. This specialist performed arthroscopic surgery to repair a tear of the medial meniscus of Dolph's left knee. Dolph attempted to return to work twice but was unable to do so because of pain in his left knee. He has not worked since.

Dolph made a claim for worker's compensation benefits, stating that while working his left knee "got really weak." The Commission first determined that Dolph had suffered an industrial accident and injury while working for Hecla. Upon reconsideration, the Commission withdrew its first ruling and determined that Dolph had not suffered a compensable accident and injury and thus was not entitled to workers' compensation. Dolph appealed.

### II.
### THERE IS SUBSTANTIAL COMPETENT EVIDENCE TO SUPPORT THE COMMISSION'S FINDING.

Dolph asserts that there is insufficient evidence to support a finding that Dolph did not experience an unlooked for mishap or untoward event. We disagree.

The standard of review we are bound to follow is whether, construing the record most favorably to the party which prevailed before the Commission, there is any substantial competent evidence to support the Commission's factual findings. *Vernon v. Omark Indus.*, 115 Idaho 486, 488, 767 P.2d 1261, 1263 (1989). "[I]n order to be entitled to benefits, the claimant must prove that [claimant] suffered an 'accident,' *i.e.*, 'an unexpected, undesigned, and un-

looked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury.'" *Id.* at 489, 767 P.2d at 1264 (quoting I.C. § 72–102(14)(b)) presently I.C. § 72–102(15)(b) as of 1/1/90.

The Commission's decision includes this finding:

> The Commission finds that the proof does not establish a mishap or event which is required by law in order for an accident to have occurred. The Claimant describes no specific mishap or event which occurred on December 2, 1988, and the proof shows only that Claimant's knee gradually became painful and was extremely painful at the conclusion of his work shift. The claimant has a history of injuring the knee in 1987, and he testified that he was experiencing some problems with his leg for a few days prior to December 2, 1988. The Claimant complained to his co-worker of problems with his knee at the commencement of the work shift on December 2, 1988. The Commission is unable to find that the torn cartilage in the Claimant's knee was caused by a mishap or event which occurred on December 2, 1988.

While there is evidence in the record that would have allowed us to sustain a finding of the Commission that Dolph did sustain an accident on the job that would have entitled him to worker's compensation, there is also substantial competent evidence in the record to support the Commission's finding that Dolph did not sustain an accident on the job. While we are sympathetic to Dolph's case, it is the Commission's function, not ours, to determine which workers are entitled to compensation based on the facts of each case.

### III.

### CONCLUSION.

We affirm the decision of the Commission denying Dolph's claim for worker's compensation.

We award costs on appeal to Hecla.

BAKES, C.J., and BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, dissenting.

Jerry Dolph had worked as a miner for Hecla Mining Company *for nine years* when on December 2, 1988 his knee gave out while working in a mine. Dolph submitted a claim for workers' compensation benefits, which his self-insured employer denied. Dolph then filed a claim with the Industrial Commission, and the Commission ultimately ruled that Dolph was not entitled to compensation for his injury because he was unable to point to a specific mishap or event occurring on December 2, 1988, which caused the tearing of the medial meniscus of his left knee. R. 77. This ruling reversed the Industrial Commission's first determination that Dolph had suffered an industrial accident. A majority of this Court affirms the Industrial Commission's denial of benefits to Dolph. My inability to join that affirmance is based on two reasons. First, the majority places the wrong inference on the evidence in the record on this appeal. Second, the majority implicitly agrees with the Industrial Commission's incorrect interpretation of the requirements for coverage under Idaho's workers' compensation law.

### I. INFERENCES ON APPEAL FROM THE INDUSTRIAL COMMISSION

The majority begins its review of the case by stating a general principle of appellate review applicable to *civil* controversies—that the record on appeal must be construed favorably to the party which prevailed below. This general principle of appellate review crept into workers' compensation law in the case of *Hazen v. General Store,* 111 Idaho 972, 729 P.2d 1035 (1986), but the majority opinion is not counterbalanced by the fundamental principle of our workers' compensation law that it "shall be construed liberally in favor of the injured employee, I.C. § 72–102, and ... that one of the principal requirements of the workmen's compensation law is that insofar as possible the injured workman shall be restored to health by reasonable and proper treatment." *Steinebach v. Hoff Lumber*

*Co.,* 98 Idaho 428, 432, 566 P.2d 377, 381 (1977) (citations omitted). The majority's decision to utilize a general civil case principle in order to put all inferences in favor of the winning party in a workers' compensation case, without recognizing the intent of that law to provide "sure and certain relief" (I.C. § 72–201) may make the Court's review of workers' compensation cases even more of a rubber stamp than it already is.

The problem raised by the majority's disregard of the inference this Court and the Industrial Commission are required to draw from the evidence and the law in workers' compensation cases is similar to the concern raised in *Brooks v. Standard Fire Ins. Co.,* 117 Idaho 1066, 793 P.2d 1238 (1990). In *Brooks,* I noted that while the Court had ruled correctly, it had also implicitly overruled at least two prior court decisions. The cases that I know of that are targeted by today's majority for the scrap heap are more numerous and recent than the cases overruled by *Brooks.* I list them here for the convenience of and consideration by the bar, the Industrial Commission, and of course the bench. The most recent case appears last, and unlike the most recent case overruled in *Brooks,* it is not from the 1960's: *Smith v. University of Idaho,* 67 Idaho 22, 26, 170 P.2d 404, 406 (1946) ("all courts are agreed that there should be accorded to the Workmen's Compensation Act a broad and liberal construction, that doubtful cases should be resolved in favor of compensation"); *Fitzen v. Cream Top Dairy,* 73 Idaho 210, 216, 249 P.2d 806, 809 (1952) ("a determination ... must be made upon the particular undisputed facts liberally construed to include employment as covered rather than exclude it"); *Mandes v. Employment Sec. Agency,* 74 Idaho 23, 28, 255 P.2d 1049, 1052 (1953) (unemployment compensation coverage "is to be liberally construed in favor of the employee"); *Burch v. Potlatch Forests, Inc.,* 82 Idaho 323, 327, 353 P.2d 1076, 1078 (1960) ("[i]t is too well settled under the decisions of this Court to require the citation of authorities that the provisions of the Workmen's Compensation Law of this state are to be liberally construed in favor

of employees"); *Mayo v. Safeway Stores, Inc.,* 93 Idaho 161, 165, 457 P.2d 400, 404 (1969) ("[t]his court has repeatedly stated that this law is to be liberally construed with a view to effect its objects and promote justice"); *In re Haynes,* 95 Idaho 492, 496, 511 P.2d 309, 313 (1973) ("construing the Act liberally in favor of compensation, we are of the opinion that the findings of the Industrial Accident Board are not supported by the record"); *Rohnert v. Amalgamated Sugar Co.,* 95 Idaho 763, 765, 519 P.2d 432, 434 (1974) ("[t]his Court has held many times that workman's compensation statutes are to be liberally construed in favor of the workman"); *Goodson v. L.W. Hult Produce Co.,* 97 Idaho 264, 266, 543 P.2d 167, 169 (1975) ("[t]his court repeatedly has recognized the policy that 'there should be accorded to the Workmen's Compensation Act a broad and liberal construction, that doubtful cases should be resolved in favor of compensation, and that the humane purposes which these acts seek to serve leave no room for narrow technical construction'"); *Steinbach v. Hoff Lumber Co.,* 98 Idaho 428, 431, 566 P.2d 377, 380 (1977) ("the workmen's compensation law shall be liberally construed in favor of the injured workman and so as to enhance the physical and economical rehabilitation of the injured employee"); *Hattenburg v. Blanks,* 98 Idaho 485, 567 P.2d 829 (1977) ("[a]s this Court has held many times, the Act is to be construed liberally in favor of a claimant"); *Smith v. Department of Employment,* 100 Idaho 520, 521, 602 P.2d 18, 19 (1979) ("[t]he Idaho Employment Security Act [part of Title 72] was enacted to help alleviate the economic and social hardships caused by unemployment which did not result from the fault of the employee.... [t]he Act must be liberally construed to effect that purpose"); *Parker v. St. Maries Plywood,* 101 Idaho 415, 419, 614 P.2d 955, 959 (1980) ("consistent with the rule that the Idaho Employment Security Act must be liberally construed to effect its purpose of helping to alleviate the social and economic hardships caused by unemployment which does not result from fault of the employee"); *Miller v. Amalgamated Sugar Co.,* 105 Idaho 725, 729, 672 P.2d 1055,

1059 (1983) ("our statute and case law require that in accord with legislative policy, workmen's compensation statutes are to be construed most favorably in favor of the claimant"); *Kinney v. Tupperware Co.*, 117 Idaho 765, 769, 792 P.2d 330, 334 (1990) ("[t]he Worker's Compensation Act is to be construed liberally in favor of the claimant [and] [t]he humane purposes which it seeks to serve leave no room for narrow, technical construction"); *Haldiman v. American Fine Foods*, 117 Idaho 955, 956, 793 P.2d 187, 188 (1990) ("[f]or almost seventy years this Court has adhered to the principle that the worker's compensation law should be liberally construed in favor of the claimant in order to effect the object of the law and to promote justice"); *Yount v. Boundary County*, 118 Idaho 307, 308, 796 P.2d 516, 517 (1990) ("[o]ur Idaho Workers' Compensation Act is to be liberally construed in order to implement its beneficial purposes").

Some may say that I have confused the role of the Industrial Commission with the role of this Court. The argument would be that while the Industrial Commission is required to liberally construe workers' compensation in favor of the claimant, we have no such obligation. My only reply is that if that were the case, our reversal of the Industrial Commission in as recent a case as *Yount v. Boundary County*, and in other cases cited above, would be wrong. The only difference between the Industrial Commission and this Court, as far as the inference in favor of the claimant is concerned, is that the Industrial Commission must apply that inference to the evidence presented to it and the workers' compensation law, while we must apply that inference to the law and the facts supported by substantial and competent evidence which are found by the Industrial Commission.

The argument can also be made that the inference applies only to the law but not the facts, *i.e.*, we are required to be liberal in our application of the law only insofar as the law is concerned. I cannot understand this distinction when it is our function to review the law *as applied* to the facts as found to be supported by substantial and competent evidence. For instance, when

this Court holds that an employee is in fact an employee and not an independent contractor, it bends reason to the breaking point to suggest that the law has been construed in favor of the claimant, but the facts were not!

If the citation to 16 cases, all of which are in supposed good standing and some of which are quite recent, does not bring into doubt the application by the majority of an inference in favor of the winning party in workers' compensation cases, consider this. If one takes the time to trace the first use of this inference in workers' compensation law, one notices that the first use is a recent occurrence, and the inference is obviously a creature of the civil realm, foreign to workers' compensation cases. The majority cites to and quotes with approval from *Vernon v. Omark Indus.*, 115 Idaho 486, 767 P.2d 1261 (1989), for the inference. *Vernon*, authored by Chief Justice Bakes, cites to and quotes from this passage in *Hazen v. General Store*, 111 Idaho 972, 729 P.2d 1035 (1986), also authored by Chief Justice Bakes:

> Accordingly, construing the record most favorably to the respondent in this matter, as we must, there is more than sufficient substantial, competent evidence to sustain the finding of the Industrial Commission 'that the claimant's herniated disk was not the result of an accident but rather occurred over a longer period of time' and, as Dr. Bowman testified, as 'the result of the aging process.'

*Hazen*, 111 Idaho at 974, 729 P.2d at 1037 (no citations omitted).

That would appear to be the end of the trail, because no case is cited in support of the above proposition. However, in the very beginning of the *Hazen* opinion, this passage appears:

> The basic tenet of appellate review is that on appeal the record is to be construed most favorably to the party which prevailed below. *Higginson v. Westergard*, 100 Idaho 687, 689, 604 P.2d 51, 53 (1979); *Furness v. Park*, 98 Idaho 617, 570 P.2d 854 (1977); *Brizendine v. Nampa Meridian Irr. Dist.*, 97 Idaho 580, 585, 548 P.2d 80, 85 (1976).

*Hazen,* 111 Idaho at 972, 729 P.2d at 1035. Needless to say, *not one* of the cases listed in support of the idea that this "basic tenet" of appellate review applies to workers' compensation cases is a workers' compensation case. The application by *Hazen* of this "basic tenet" to a workers' compensation case was and remains a new idea and invention, a folly wholly without support in the case law or statutes.

In capping off this discussion, it is to be noted that the cases cited in *Hazen* do not refer to this principle of appellate review as a "basic tenet." But, so one might surmise, the rebuttal would go, that was then, and this is now.

## II. INJURY, ACCIDENT, AND THE COURT'S INTERPRETATION

The other reason for my dissent from today's opinion stems from the majority's acceptance of the Commission's *incorrect* interpretation of the requirements for a compensable injury. An injury, to be recognized as compensable under the Idaho Workers' Compensation Act, must be caused by an industrial accident. I.C. § 72–102(14). The majority concludes that "[w]hile there is evidence in the record that would have allowed us to sustain a finding of the Commission that Dolph did sustain an accident on the job that would have entitled him to workers' compensation, there is also substantial competent evidence in the record to support the Commission's finding that Dolph did not sustain an accident on the job." Maj. Op. at 250.

The majority errs in upholding the Commission's denial of benefits because the Commission incorrectly interpreted and applied the provisions of I.C. § 72–102(14). Those provisions state that:

**72–102. Definitions [Effective until January 1, 1990].**[1]—Words and terms used in the workmen's compensation law, unless the context otherwise requires, are defined in the subsections which follow.

. . . .

**1.** The definition provisions effective January 15, 1990 do not alter the definitions of the terms

(14) 'Injury' and 'accident.'

(a) 'Injury' means a personal injury caused by an accident arising out of and in the course of any employment covered by the workmen's compensation law.

(b) 'Accident' means an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury.

(c) 'Injury' and 'personal injury' shall be construed to include only an injury caused by an accident, which results in violence to the physical structure of the body. The terms shall in no case be construed to include an occupational disease and only such nonoccupational diseases as result directly from an injury.

The Industrial Commission ruled that Dolph's injury was not compensable because "it was unable to find that the torn cartilage in the Claimant's knee was caused by a mishap or event which occurred on December 2, 1988." R. 77. By this statement the Commission either thought that there was no accident at any time, or that Dolph simply could not point to exactly when the accident occurred. Both of these obstacles to compensation will be discussed. The Commission erred in denying compensation no matter which of these two obstacles the Commission thought was insurmountable.

As to the problem of Dolph not being able to point to the exact time when the accident occurred, the Commission failed to consider or understand that this requirement will be met if the result of the accident materializes at some identifiable point. The majority also failed to make any analysis of this issue. Instead it simply concluded that the record contained substantial, competent evidence that there was an accident or that there was no accident, and that since both could be found, it deferred to the Commission's choice between the two.

"injury" and "accident."

**720**

The requirement that an accident must be shown to occur at a sufficiently definite time is met if either the cause of the accident is reasonably limited in time or the result of the accident materializes at an identifiable point. 1B A. Larsen, Workmen's Compensation Law § 39.00 (1990) (hereafter "Larsen"). In Dolph's case the result of the accident materialized at an identifiable point. According to the Commission's findings of fact, during the course of the workday on December 2, 1988, Dolph's knee became increasingly painful and by midday went limp and felt weak. By the end of his shift his knee had become quite painful and he had difficulty exiting the mine on the ladder. R. 74. Dolph could not pinpoint exactly when and how the injury occurred. Dr. Pike, an orthopedic surgeon, testified that when there is a tear of the medial meniscus, the patient does not notice the tear until it becomes big enough to cause instability and symptoms. This explains why Dolph was unable to pinpoint exactly when the tear began.

The fact that Dolph cannot pinpoint when the tear began does not, however, force upon him the costs of his injury. The injury is compensable because Dolph and the Commission are able to point to a definite time when the result of the accident materialized. *See* 1B Larsen § 39.30; *Williams v. Sherwood Homes*, 333 So.2d 756 (La.App.1976) (claimant was assembling an axle when he suddenly lost use of his left hand and was unable to continue work; he could not explain what had caused his hand to "give way," but he was awarded permanent total disability); *Conroy v. Carter Automotive Products Corp.*, 640 S.W.2d 831 (Tenn.1982) ("when a condition has developed gradually over a period of time resulting in a definite work-connected, unexpected fortuitous injury it is an 'accident' within the Worker's Compensation Act and is compensable"); *Owens v. Workmen's Comp. App. Bd.*, 39 Pa. Cmwlth. 510, 395 A.2d 1032 (1979) (it was not necessary for claimant to point to any specific event which caused the onset of his back pain).

As to the problem of there not being any accident at all, the Commission failed to apply the law to this issue. The Industrial Commission did properly cite to *Pinson v. Minidoka Highway Dist.*, 61 Idaho 731, 106 P.2d 1020 (1940), which stands for the principle that an accident can occur while the employee is doing what he habitually does and that it is not necessary for him to slip and fall or for machinery to fail to cause the injury. The Commission, however, failed to correctly apply *Pinson* to the facts of this case.

*Pinson* involved a workers' compensation claim that arose after a blood vessel in the claimant's brain ruptured while he was operating a jackhammer. The appellant highway district argued before this Court that there had been no accident. In a unanimous opinion, the Court dismissed that argument:

Appellant's remaining contention is one that has been heretofore considered by this court on several occasions, appellants urging that there was no accident because the deceased was doing the work he was expected to do and in the manner contemplated; that since it is not an unusual occurrence for a drill to become caught or stuck, there can be no 'accident' in the absence of a fall, a slip, or a stumble on the part of the workman or a breakdown on the part of the machinery operated by him. To constitute an 'accident' it is not necessary that the workman slip or fall or that the machinery fail. An 'accident' occurs in doing what the workman habitually does if any unexpected, undesigned, unlooked-for or untoward event or mishap, connected with or growing out of the employment, takes place.

*Pinson*, 61 Idaho at 738, 106 P.2d at 1023 (citations omitted).

Just like the claimant in *Pinson*, Dolph suffered his injury while working as he habitually did and without the occurrence of a slip or fall or failure in the operation of machinery. Dolph's knee gradually became more painful as the workday progressed and finally gave out completely. The severe tear in Dolph's knee is the equivalent to Pinson's ruptured blood vessel and constitutes the required unex-

pected, undesigned, unlooked-for or untoward event or mishap.

In discussing what constitutes an accident, the case of *Wynn v. J.R. Simplot Co.*, 105 Idaho 102, 666 P.2d 629 (1983), reaffirmed a long history of cases holding that:

> If the claimant be engaged in his ordinary usual work and the strain of such labor becomes sufficient to overcome the resistance of the claimant's body and causes an injury, the injury is compensable.

105 Idaho at 104, 666 P.2d at 631 (citing with approval to *Whipple v. Brundage*, 80 Idaho 193, 327 P.2d 383 (1958), and *Lewis v. Dept. of Law Enforcement*, 79 Idaho 40, 311 P.2d 976 (1957)). Dolph's knee injury is just such a case of an injury resulting from the strain of the ordinary usual work overcoming the resistance of the claimant's body.

There is no overemphasizing that the workers' compensation law must be construed liberally in favor of the injured employee. *Steinebach*, 98 Idaho at 432, 566 P.2d at 381. It should also be remembered that the basic concept, the *quid pro quo*, underlying the creation of the Worker's Compensation Act was that the worker, for surrendering his or her right to sue in tort to obtain damages from his or her employer when injured on the job, would in return be assured just compensation. I.C. § 72–201; 1 Larsen § 1.10. Judicial interpretation of the Worker's Compensation Act which erodes the protection afforded to the injured worker undermines the purpose of the Act. The workers have been stripped of their right to seek redress in damages which a jury or district court would award. Commission decisions and Supreme Court decisions are patently unjust whenever the worker is erroneously or arbitrarily denied the promised "sure and certain relief."

The order of the Industrial Commission should be reversed and the cause remanded, and the Commission should be instructed to issue an order awarding benefits for this compensable industrial accident. If the Court does not so respond, at the least there is the alternative of vacating the Commission's decision, and remanding for reconsideration. The decision which we reviewed did not measure up in quality with previous decisions. It is not unlikely that the pressure attendant to changing crews, to which is added the fact that the Commission for now many years has been engulfed with a very heavy and burdensome workload, contributed to the Commission's hectic pace.

It cannot be gainsaid that many are our decisions which have vacated so that the Commission can reconsider. When we can do so, we should do so. Otherwise, a decision of the Commission stamped "approved" by this Court is the end of the line for the once faithful but now incapacitated worker.